## Joseph Keller *vs.* The State.—Sebastian Lanhardt *vs.* The State.—John Zwanger *vs.* The State.—George Beck *vs.* The State—Conrad Hoffman *vs.* The State.— Jacob Woleber *vs.* The State.

The *title* of the act of Assembly of 1856, ch. 353, is: "An act to raise additional revenue to pay the debts of the State, by increasing the rates of license to ordinary keepers and traders."   Held:

That a provision in this law requiring *venders of lager beer, manufactured* by themselves, to take out licenses, does *not contravene* the 17th section of the 3rd article of the Constitution, which provides that "every law shall embrace but *one subject,* and that shall be *described* in the *title.*"

A State law, taxing, by way of a *license,* those who sell, in *small quantities, lager beer manufactured* by themselves within the State, is *constitutional;* it is a law which the State has the power to pass, in exercise of the *right* to regulate its internal police, and every thing that relates to the *morals* and *health* of the community.

The license law of 1856, ch. 353, and the previous one of 1827, ch. 117, and

Keller, *et al., vs.* The State.

its supplements, are to be considered as in *pari materia,* and persons neglecting to obtain licenses, as prescribed by the act of 1856, are amenable to the penalties imposed by the previous acts.

Penal laws ought not to be so strictly construed as to defeat the obvious intent of the Legislature, and though they are not to be extended by construction, they should receive a *rational* construction.

If a statute enjoins an act to be done, without pointing out any mode of punishment, an indictment will lie for disobeying the injunction of the Legislature.

APPEALS from the Criminal Court of Baltimore city.

In these cases, each of the appellants was indicted for a violation of the license laws. Each indictment contained eight counts, charging, in substance, that the traverser, on the 2nd of May 1856, unlawfully kept, in the city of Baltimore, an ordinary, or place for the sale of, exposed for sale, and sold, spirituous liquors, to wit, whiskey, brandy, gin, rum, and *fermented liquors,* to wit, wine, porter, ale, and *lager beer,* in quantities less than a pint, without first obtaining a license so to do, contrary to the form of the act of Assembly in such case made and provided, &c. The pleas were *non cul.,* and the cases were submitted to the court, to be tried on the following *admission of facts,* signed by the State's Attorney and the attorney for the traversers:

"It is admitted that the parties indicted are the brewers of lager beer, and that they retail, in small quantities less than a pint, in lager beer saloons by them kept, the beer by them so manufactured, without license."

The court (STUMP, J.) found the parties guilty, and imposed a fine of twenty dollars upon each of them. From these judgments the traversers appealed.

The act of 1856, ch. 353, entitled, "An act to raise additional revenue to pay the debts of the State, by increasing the rates of license to *ordinary keepers* and *traders,*" provides, by its 1*st section,* that it shall not be lawful for any person "other than the grower, maker or manufacturer of the specific articles which shall be therein exposed for sale, except such maker or manufacturer as hereinafter specified," to sell, or expose for sale, in any shop, &c., certain enumerated articles, including

"spirituous or fermented liquors, in quantities not less than a pint," "without first obtaining a license, in the manner prescribed by this act," "*provided, nevertheless,* nothing here contained shall be construed to exempt the establishment of lager beer, or the vendors thereof." The *2nd section* makes it the duty of the comptroller to prepare licenses answering to the provisions of this act. The *3rd section* makes it the duty of any person desiring to sell or barter any of the articles enumerated in the first section, to take out a license therefor, for which he is to pay according to prescribed rates. The *4th section* provides, that if any person "shall desire and purpose to set up and keep an ordinary, tavern, or inn, or a victualing house, cook shop, or oyster house, or any other place, at or in which spirituous or fermented liquors, or *lager beer*, may be sold or bartered in quantities less than a pint, at any one time, it *shall be the duty* of such person or persons" to apply to the clerk of the county where he resides, or to the clerk of the court of common pleas, if he resides in the city of Baltimore, for a license, and the rate at which he is to pay therefor, is then prescribed. The *5th, 6th and 7th sections* relate to the time when the licenses shall expire, and to unexpired and fractional licenses. *The 8th section* enacts, "That no applicant for a trader's license shall be permitted, under such license, to sell any spirituous or fermented liquors, unless he shall take out an ordinary license of twenty-five dollars ; *provided, however,* that nothing herein contained shall be construed so as to allow them to sell in quantities less than a pint."

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*John H. Ing* and *Chas. F. Mayer* for the appellants:

1st. The appeals were properly taken. The case of *State vs. Lancaster* was the case of a *judgment confessed,* whilst these are cases of *special verdicts,* which are to be treated as if they arose on *demurrers,* where, on appeal, the whole record is brought up for review. In case of a *special verdict,* there is no such thing as a motion in arrest of judgment. *Stephen's*

*Pl.*, 124. But even if it were a judgment upon an agreed case, an appeal will still lie. 16 *Pet.*, 291, *United States vs. Eliason.* 10 *How.*, 345, 346, *Stimpson vs. Balto. & Susq. Rail Road Co.* See also, on this point, 3 *G. & J.*, 158, *Hysinger vs. Baltzell.* 4 *G. & J.*, 407, *Charlotte Hall School vs. Greenwell.* 9 *Gill*, 242, *Cushwa vs. Cushwa.*

2nd. The act of 1856, ch. 353, under which these prosecutions took place, imposes no penalty, and authorizes, at common law, on its words, no punishment. It is a mere *revenue law*, imposing no penalty, and making no *appropriation* of one if imposed, and, therefore, only entitles the State to an action of *debt* for a failure to take out the license. 2 *Strange*, 828, *Rex vs. Malland.* 2 *Johns.*, 379, *Jones vs. Estis.* 9 *Bac. Abr.*, 254. *Plowden*, 206. 1 *Bl. Com.*, 56. *Dwarris on Statutes*, 695, 715, 737, 750.

3rd. Manufacturers of *lager beer* are not, by the act, under an obligation to obtain licenses to sell in *quantities less than a pint*, especially as manufacturers of other kinds of beer are expressly exempted. To the manufacturers, as we insist, the act has no sort of application. Its 4th section is to be read in connection with the *first*, which expressly exempts the manufacturers of this beer from taking out licenses, and applies solely to those who sell *lager beer, not being manufacturers thereof.* It is said, this act must be construed in connection with the previous license laws, but even if this be so, those laws expressly exclude *growers* and *manufacturers.*

4th. The Legislature had, constitutionally, no right to tax manufacturers of lager beer with cost of licenses to authorize them to sell their manufactured products. Fines, duties or taxes may be imposed on persons or property, "with a political view, for the good government and benefit of the community," (*Dec. of Rights, art.* 13,) but this is not a tax of that character; it is not a *police regulation* to preserve the health and morals of the community, but a mere *revenue act*, imposing taxes for the purpose of paying the State debt, as indicated by its title. Such taxes must be imposed equally upon the property of each individual, according to its actual worth. *Dec. of Rights, art.* 13 and *art.* 21. But the State has no right to tax in the

mode provided for in this law. It may tax personal property, but that same property cannot afterwards be *accumulatively* taxed in the shape of a license, which is, in effect, a tax on the property itself. *Imported* manufactured articles may be taxed as all other property, either specifically or in the form of a license to sell, (12 *Wheat.*, 419, *Brown vs. The State of Maryland;* 5 *How.*, 592, *License Cases;*) but the domestic manufacturer, whose property is *once taxed* specifically, cannot afterwards be burthened with a second tax in the shape of a license.

5th. But this act is also unconstitutional, because its *title* is not descriptive, as required by the 17th section of the 3rd art. of the Constitution. 7 *Md. Rep.*, 160, *Davis vs. The State.* Its *title* says it is "*An act* to raise *additional revenue* to pay the debts of the State, by increasing the rates of license to *ordinary keepers* and *traders.*" This gives no warning of such a *provision* as that under which these parties were *prosecuted* and *fined*, and is, in this particular, a plain violation of the constitutional provision which says, that "Every law shall embrace but *one* subject, and that shall be described in the *title*." By the previous laws on the subject, *ordinary keepers* and *traders* were required to take out licenses, but *manufacturers* of *lager beer* were not so required. By the *title* of this law, its subject is the *increasing* of the *rates of license* for those who, under previous laws, were required to *have licenses*, and any provision in it subjecting a *new class* of persons to its operation, comprehends a subject not described in the *title*, and *more than one* subject, and, therefore, renders the law, or at least that portion of it, void.

*Milton Whitney*, State's Attorney for Baltimore city, for the State:

1st. No appeal lies in these cases, and they must be dismissed. In *Rawlings vs. The State*, 1 *Md. Rep.*, 127, this court, in speaking of the manuscript case of *Lancaster vs. The State*, decided at September term 1850, in which the appeal was dismissed, on the ground "that the case could only be brought to the court by writ of error," say: "The question raised in the court below was submitted without argument,

67    v. 11

Keller, et al., vs. The State.

upon an agreed statement of facts. There was no motion in arrest of judgment; we suppose the appeal was dismissed for that reason.'' That is precisely this case. It was submitted to the court below upon an agreed statement of facts. There was no motion in arrest of judgment, which would have brought up the whole record. 4 *G. & J.*, 416, *Charlotte Hall School vs. Greenwell.* 5 *G. & J.*, 110, *Sasscer vs. Walker.* There was no assignment of errors in the court below, and there is no error *appearing on the record.* It is an appeal from the judgment of the court imposing a fine, without any assignment of errors, and without the judgment of the court below upon a motion in arrest of judgment. If this appeal lies, then an appeal can be taken in any and every case, without raising the points below upon which the party intends to rely on his appeal. No point of law appears, by the record, to have been made in the court below. The act of 1827, ch. 117, authorizes the court, upon conviction, to impose a fine, or imprison the party, and no appeal has ever been allowed where imprisonment could be imposed by the court as part of the punishment.

2nd. But assuming the appeal will lie, it is then insisted, upon the part of the State, that the court below had power to impose the penalty in this case, and that the judgment of the court was legal and proper. The act of 1856, ch. 353, clearly makes it *the duty* of parties desiring to sell *lager beer, to take out a license* for that purpose, and there can be no valid objection to the constitutionality of this law. But it is said, the act imposes *no penalty* for refusing to take out a license. In reply to this objection it may be said, *first,* that this act is to be construed in connection with that of 1827, ch. 117, and its supplements of 1832, ch. 273, and 1834, ch. 232, which do impose penalties, these laws being all *in pari materia;* and *secondly,* that it is a clear principle of law, that whenever a statute prohibits any matter of public grievance, or *commands* a matter of public convenience, *without enacting any penalty for disobeying its prohibitions or commands,* those who violate its provisions, may be prosecuted by indictment, and punished by fine. 5 *New Hamp.*, 257, *State vs. Fletcher. Wharton's*

*Cr. Law*, 39. 1 *Russell on Crimes*, 49, 50. 1 *Barr.* 224, *Gearhart vs. Dixon.* 6 *Humph.*, 17, *State vs. Maze.* 9 *Yerger*, 353, *Moore vs. The State.* 2 *Strobhart*, 12, *State vs. Thompson.*

Tuck, J., delivered the opinion of this court.

These cases were argued and will be decided together, as they all depend on the same condition of facts and law. In view of their importance, as affecting the public interest, we have considered them upon the merits, and having concluded that the parties were properly indicted and convicted, it is immaterial to them whether we affirm or dismiss the appeals. The latter point we have not examined.

These appellants were indicted, each in eight several counts, for violating the license laws, from which they claim exemption, because they "are manufacturers of lager-beer, which they retail in small quantities less than a pint, in lager-beer saloons without license."

And, first, it is contended, that the title of the act of 1856, ch. 353, is not sufficiently descriptive within the seventeenth section of the third article of the constitution, which declares, that "every law enacted by the Legislature shall embrace but one subject, and that shall be described in the title." In the case of *Davis vs. The State*, 7 *Md. Rep.*, 151, a construction was placed on this clause of the constitution, which we think maintains the validity of this act of Assembly, against the objection now under consideration. This law relates to licenses to ordinary keepers and traders, as the subject of legislation. The purpose is declared to be the raising of additional revenue, to pay the debts of the State by increasing the rates of license. The subject of the act would have been sufficiently indicated by the title, if this purpose had not been declared. The act does not dispose of the fund raised from these licenses, or in any manner treat of the revenue or debts of the State. It might, with as much reason, be said, that because a person violating the act may be punished by indictment, three subjects are embraced, to wit; revenue, licenses and crimes. The evils designed to be prevented by this clause of the constitu-

tion, are well stated in *Davis vs. State,* and we do not per-
ceive that this act is multifarious in the sense of that instru-
ment, or calculated to contravene its purposes.

It is also contended, that the act is unconstitutional, because
it lays a tax, by way of license, on manufacturers of lager-
beer, which, it is said, compels them to pay more than their
fair proportion towards the support of government; that it is a
revenue measure, and not an exercise of legislative power, un-
der the last clause of the 13th article of the bill of rights,
"with a political view, and for the good government and bene-
fit of the community." We might dispose of this objection
by referring to the case of *Burton, et al., vs. The State,* 3
*Gill,* 1, in which several questions were decided, and points
ruled, upon the act of 1844, ch. 280, entitled "An act impos-
ing duties on promissory notes, bills of exchange, specialties
and other instruments of writing, to aid in paying the debts of
the State," and which act, as to some of the instruments then
before the court, was declared to be valid. The title plainly
showed, as does the title of the act of 1856, that the proceeds
of the duties imposed, were to be applied in payment of the
public debt, yet it does not appear to have been urged by
counsel, or to have occurred to the court, that the act was void,
because persons who might use stamped paper would be con-
tributing to the support of government, on a basis other than
"his actual worth, in real or personal property;" and we think
that, considering the large amount raised by that source of rev-
enue, and the opposition to the law in some sections of the State,
the question would have been decided, if the court had thought
that act violated the old bill of rights, which was the same as
the present, as far as it relates to this question.

But the system of legislation to which this act belongs, may
be vindicated upon the plainest grounds of public policy, ac-
knowledged and acted upon in most, if not all, the States of the
Union, *to wit:* the right to regulate their internal police, and
every thing that relates to the morals and health of the com-
munity, besides having received the sanction of the highest
tribunal known to our institutions. In the case of *Brown vs.
The State of Maryland,* 12 *Wheat.,* 419, it was decided, that

a State Legislature could not require the importer of foreign articles to take out a license from the State before selling a bale or package so imported, because such legislation would be repugnant to two provisions of the constitution of the United States, that which delares, that "no State shall, without the consent of Congress, lay any imposts or duties, on imports or exports, except what may be absolutely necessary for executing its inspection laws;" and that declaring, that Congress shall have power "to regulate commerce with foreign nations, and among the several States, and with the Indian tribes;" but it was conceded, that this prohibition continues only so long as the article remains the property of the importer, in the original form or package in which it is imported, and that when the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it loses its distinctive character as an import, and becomes subject to the taxing power of the State, whether in the form of licenses to those who may deal in quantities less than the original package, or through sales by licensed auctioneers, or by regulations for the safety and health of its citizens. In the *License cases, 5 Howard,* 504, *Ch. J. Taney,* refers to Brown *vs. The State of* Maryland, as "drawing the line between foreign commerce, which is subject to the regulation of Congress, and internal or domestic commerce, which belongs to the States, and over which Congress can exercise no control," and all the judges who heard the cases concurred in affirming the validity of State laws, regulating the sale of ardent spirits, by requiring licenses to sell by retail. These were fully argued, and most of the judges delivered separate opinions, in view of the importance of the questions involved, and there was a difference among them on some of the points, but there was no dissent as to this power of the State. *Ch. J. Taney* says, "but although a State is bound to receive, and to permit the sale by the importer, of any article of merchandize which Congress authorises to be imported, it is not bound to furnish a market for it, nor to abstain from the passage of any law which it may deem necessary and advisable to guard the health or morals of its citizens, although such law may discourage importation or di-

minish the profits of the importer, or lessen the revenue of the General Government. And if any State deems the retail and internal traffic in ardent spirits injurious to its citizens, and calculated to produce idleness, vice or debauchery, I see nothing in the constitution of the United States, to prevent it from regulating and restraining the traffic, or from prohibiting it altogether, if it thinks proper." To the same effect, see the opinions of *Justices McLean*, (588, 591, 592, 595;) *Daniel*, (617;) *Woobury*, (623, 626, 627;) *Grier*, (631.) The conclusion to be drawn from those cases is, that the liquors sold by the parties, plaintiffs in error, stood on no higher ground than domestic spirits, and that such spirits are subject to State authority as objects of taxation, or of license in restraint of their sale; and it follows, that if the liquors, for selling which the present traversers stand indicted, were merely sold by them, the validity of the act of 1856, could not be doubted.

But it is supposed that the appellants are protected, although the liquor sold is domestic, because they are manufacturers, and only retail beer of their own brewing. We are not now dealing with the power of the State, to tax, by license or otherwise, the manufacturers of this article; the question is, can they claim the right to trade or traffic in it, in small quantities, when all other persons are required to take out licenses for the purpose? It is very manifest that this position, if allowed, might defeat in a great degree the object of the license laws, so far as they are designed to protect the morals of the community. For every distiller and brewer may become a retail dealer, or have a tippling saloon annexed to his establishment, and thus evade the license laws altogether; or the small vender may make brewing a part of his business, with the same injurious effect upon the policy of the State. If, as was held in *Brown vs. The State of Maryland*, the imported article is liable to be affected by a State license law, as soon as the original package is broken up for use or retail by the importer, (see opinion of *Chief Justice Taney*, 5 *Howard*, 575,) we cannot perceive why a manufactured domestic article shall not be liable to the same laws, when placed in the market for retail, even granting that the manufacturer, as such, would be exempted from this spe-

cies of tax. In the language of *Ch. J. Taney*, in 5 *Howard*, 577, as applied to imports, we may say, that although a State may not have the power to prevent the manufacture of a deleterious article, "it is not bound to furnish a market for it, nor to abstain from the passage of any law which it may deem advisable or necessary to guard the health or morals of its citizens." See also *Bode vs. The State*, 7 *Gill*, 326. It is also insisted, that the fourth section of the act of 1856, ch. 353, does not contain any prohibition against opening the places therein mentioned, but only makes it the duty of persons desiring to do so, to apply for a license in the manner prescribed, and does not impose any penalty for neglecting to obtain a license before selling in quantities less than a pint. To this the answer is, that the act of 1827, ch. 117, and its supplements, and the act of 1856, are to be considered as *in pari materia*, all of them relating to licenses; and that as the third section of the act of 1827, makes it unlawful "to open, set up, or keep any ordinary, tavern, or inn, &c., &c., or any place at or in which any spirituous or fermented liquor shall be sold or bartered, in quantities less than a pint, at any one time, without first obtaining a license;" and inasmuch as the last act does not alter the punishment imposed by the act of 1827 and its supplements, persons neglecting to obtain license as prescribed by the act of 1856, must be considered as amenable to the penalties then in force. It is quite plain, that the act of 1856, was passed with reference to previous legislation on the same subject, and with those acts before the law makers, because, the last act is a literal copy of some portions of the act of 1827. It is true, that in those laws there is no mention of lager beer, and on this an argument was made at the bar, that the offence charged against the defendant, is not within the prohibitions of the act of 1827 and its supplements; but we do not concede the force of this argument. The design of the legislature was to impose on the venders of lager beer the same restraints as were applied to keepers of houses for the sale of other liquors named in the act; and when they are expressly included among those required to take out licenses, they can plainly perceive what the law demands, and should comply. If they

do not, they are amenable to the penalties denounced against others, in whose predicament they choose to place themselves, by a manifest and wilful neglect of what the State authorities require, as necessary to the peace and order of society. "Even penal laws, which it is said should be strictly construed, ought not to be so strictly construed as to defeat the obvious intention of the legislature." *American Fur Co., vs. United States,* 2 *Peters,* 367. 5 *Wheaton,* 76. And, though they are not to be extended by construction, they should receive a rational interpretation. *House vs. House,* 5 *H. & J.,* 125. If a statute enjoin an act to be done, without pointing out any mode of punishment, an indictment will lie for disobeying the injunction of the legislature. *Russell on Crimes,* 49. *Rex vs. Davis, Sayer's Rep.,* 163. *Gearhart vs. Dixon,* 1 *Barr.,* 224. 4 *Bl. Com.,* 122. Here the penalty is provided by previous laws, and the plain intent was, to place the keepers of lager beer establishments on the same footing with others, required to obtain licenses to sell in small quantities, and, as these acts are *in pari materia,* they are liable to like punishment under the original and supplementary laws of 1832, ch. 273; 1834, ch. 232.

*Judgment affirmed.*