VIOLETTE, Petitioner *vs.* MACOMBER, Sheriff.

Hancock. Opinion September 29, 1926.

*The statute providing for the release of poor convicts, R. S., Chap, 137, Sec. 50, when the convict shall have tendered his promissory note for the amount due for fines or costs, accompanied by a written schedule of all his property, does not grant him release of right, but the release is a matter of discretion.*

The further provision in said statute, "except when otherwise provided," is applicable to the case at bar, and in view of the evident intention of the Legislature when it enacted Public Laws, 1923, Chapter 167, the release of the petitioner must be denied.

On report on agreed statement. Petitioner was convicted of illegal transportation of intoxicating liquor, and sentenced three hundred dollars and costs and five months in jail, and six months additional in default of payment of fine and costs. After serving the sentence of five months in jail and thirty days on the additional sentence, he tendered to the sheriff his note payable to the county treasurer for the amount of the fine and costs, together with a written schedule of his property, and requested his release from jail under R. S., Chap. 137, Sec. 50, which the sheriff refused, and he instituted habeas corpus proceedings. Cause reported on an agreed statement. Release of petitioner denied.

The case fully appears in the opinion.

*Fred L. Mason,* for petitioner.

*W. B. Blaisdell,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DEASY, STURGIS, BASSETT, PATTANGALL, JJ.

PHILBROOK, J. This is a process wherein the petitioner seeks release from the custody of the sheriff, claiming that he is now unlawfully imprisoned in the county jail and is unlawfully restrained of his liberty by the defendant. The case is reported to the Law Court for final determination upon an agreed statement of facts.

At the October term, 1925, the petitioner was found guilty of illegal transportation of intoxicating liquor and was sentenced to pay a fine of $300 and costs, and to serve five months in the county jail, and in default of payment of fine and costs to serve six months additional. The petitioner was thereupon committed to jail on October 29, 1925, wherein he remained for a period of five months, and for thirty days in addition to said five months, and being unable to pay his fine and costs, on the thirtieth day of April, 1926, he tendered to the defendant, sheriff of the county, a note for the amount due under said fine and costs payable to the treasurer of the county of Hancock, accompanied by a written schedule of all his property of every kind, signed and sworn to before a justice of the peace, and requested the sheriff to release him, which release was refused.

The petitioner then made application for a writ of habeas corpus, addressed to a justice of this court holding the April, 1926, term in said county of Hancock. The writ was granted and by virtue thereof the petitioner was brought before said Justice, when and where it was made to appear that the defendant sheriff was holding the petitioner by virtue of the sentence above quoted. The sitting Justice did not grant release under the writ but in view of the important questions of law involved reported the case to the Law Court as above stated.

The petitioner was sentenced under the provisions of Public Laws, 1923, Chapter 167, where the penalty provided reads as follows:

"Whoever violates the provisions of this section shall be fined not less than three hundred nor more than six hundred dollars and costs, and in addition thereto shall be imprisoned for not less than three months nor more than six months, and in default of payment of fine and costs shall be imprisoned for six months additional."

The petitioner claims release from further imprisonment under said sentence because of the provisions of R. S., Chap. 137, Sec. 50, which reads as follows:

"Except when otherwise expressly provided, any convict, sentenced to pay a fine or costs, and committed for default thereof and for no other cause, who is unable to pay the same, may be liberated by the sheriff, after thirty days from his commitment, by giving his note for the amount due, to the treasurer of the same county, accompanied by a written schedule of all his property of every kind, signed and sworn to before the sheriff, jailer or any justice of the peace or

trial justice, and the sheriff shall deliver same to said treasurer, for the use of the county, within thirty days; and all convicts so committed may be placed at labor in the same manner as persons sentenced to imprisonment and labor."

The issue, therefore, is whether or not the petitioner is entitled to release from further imprisonment by reason of the statutory provisions for the release of poor convicts last above quoted. His contention is that having served the five months' imprisonment imposed upon him, then at the expiration of said term he stands committed for default of payment of the fine and costs, and for no other cause, and that being unable to pay the same, after thirty days from his commitment, to wit, after thirty days from the expiration of the five months' sentence, he is entitled to release upon complying with the terms of the act relating to the release of poor convicts.

This contention calls for an examination and interpretation of the last named act and the act under which he was sentenced and committed.

In the interpretation and construction of statutes the primary rule is to ascertain and give effect to the intention of the Legislature. This rule is so universal that citation of decided cases becomes unnecessary. And it has been frequently stated, in effect, that the intention of the Legislature constitutes the law. The object in construing penal, as well as other statutes, is to ascertain the legislative intent. That is the law. The proper course in all cases is to adopt that sense of the words which best harmonizes with the context and promotes, in the fullest manner, the policy and objects of the Legislature. *United States* v. *Hartwell*, 6 Wall., 385, 18 U. S., (L. ed.), 830. In *State* v. *Bass*, 104 Maine, 288, our own court, while not unmindful of the rule that penal statutes are to be construed strictly, said "But though penal laws are to be construed strictly, yet the intention of the legislature must govern in the construction of penal as well as other statutes, and they are not to be construed so strictly as to defeat the will of the legislature." See also *Keller* v. *State*, 11 Md., 525, 69 Am. Dec. 226, and note; *Parkinson* v. *State*, 14 Md., 184, 74 Am. Dec., 522 and note. The rule of strict construction of a penal law is subordinate to the rule of reasonable, sensible construction, having in view effectuation of the legislative purpose, and is not to be so unreasonably applied as to defeat the true intent and meaning of the enactment. See 25 R. C. L., 1084, and long list of authorities there cited.

A provision for the liberation of poor convicts is to be found in the laws of Massachusetts before Maine became a separate state, and first appears in the Laws of Maine passed by our Legislature and published according to a resolve of 1821, as part of Chap. LXXXIII, Section 2. This provision applied when "said convict has lain in prison for the term of three months, for fine and costs only, and that he stands committed for no other cause; and that he has not estate sufficient to pay said fine and costs." The provision for giving a note for the fine and costs, accompanied by a sworn statement as to his property, also occurred therein, but the power to release was vested in the Justices of the Supreme Judicial Court and the Justices of the Circuit Court of the Common Pleas. The authority to release was not made dependent upon the amount of the fine and costs, whether large or small, but a rather quaint, and perhaps significant portion of the oath was that the convict had "not sufficient wherewith to support him or herself in prison or to pay prison charges." By an act of Legislature approved February 2, 1822, the authority to liberate poor convicts, which had theretofore been given to the courts, was "transferred to the several sheriffs, who are hereby authorized and required to liberate poor convicts confined in the goals of their respective counties, . . . . when they shall have lain in prison for the term of thirty days, and detained for no other cause," upon the same terms and conditions, as had been provided for in case of liberation by the courts. The time of imprisonment was also reduced from three months to thirty days. At this point it should also be noted that the original direction to the sheriffs was in the mandatory words "authorized and required" to release, but in the general revision of the Statutes in 1840 these mandatory words disappeared and it was then provided that the sheriff "may" liberate the convict. This statute remained in substantially the same form until the general revision of 1883, when there were inserted, in the first line of Chap. 135, Sec. 17, these most significant words, "Except when otherwise expressly provided." From eighteen hundred eighty-three the phraseology of the statutes has remained unchanged and now appears in Chap. 137, Sec. 50.

Exclusive of penalties provided for the violation of that portion of R. S., Chap. 127, which relates to the manufacture and sale of intoxicating liquor, our legislature, from time to time, has defined and fixed penalties for the violation of more than two hundred crimes. Those

penalties are imprisonment without fine, imprisonment or fine, imprisonment and fine, as well as fine without imprisonment.

Under the common law rule it is the practice, when punishment inflicted is by sentence to pay a fine, to include in the judgment an order that the prisoner be committed to jail until the fine is paid. This has been the practice in England from the earliest times until a comparatively recent date, and this rule has been followed very generally in this country, either from the adoption of the common law doctrine or by statutory provision in the several states. Note in *Ex parte Bryant*, 12 Am. St. Rep., 202. Detention of a condemned person in jail for failure to pay a fine is only a means provided for the enforcement of the pecuniary penalty imposed by the sentence. Actual payment of the fine itself is the punishment. Imprisonment for default of payment is a mere incident of the fine. *LeClair* v. *White*, 117 Maine, 335. When humanity and justice demanded the prisoner's release if he had "not sufficient wherewith to support him or herself in prison or to pay prison charges," was doubtless the originating reason for this statute providing for the release of poor convicts. The statute, in modern form, still exists but its mandatory words, in our state have given way to discretionary ones, and there has also been added the restrictive clause "Except when otherwise expressly provided."

Returning to the petitioner's demand for release wherein he claims literally the right of freedom because of R. S., Chap. 137, Sec. 50, let us see what the result might be as affecting this and other cases.

As above stated, exclusive of penalties for infraction of so-called liquor laws, there are upon our statute book more than two hundred crimes defined, and penalties provided for violation thereof. Of this number more than fifty per cent. of the penalties are imprisonment or fine. The length of time for incarceration, and the amount of fine, vary greatly in their terms.

Let us take, as an example, the punishment for manslaughter which may be imprisonment for not more than twenty years, or by a fine not exceeding one thousand dollars. Suppose a person convicted of that crime is fined five hundred dollars and committed until the fine and costs are paid. If the petitioner's contention as to release of poor convicts is sound then, at the end of thirty days' imprisonment, the convict would be entitled to release and a possible term of twenty years be reduced to the paltry term of one month. Under the per-

missive "may" could it be reasonably said that such was the intention of a legislature which passed the statute relied upon by the petitioner? Would such a construction be a "reasonable, sensible construction, having in view effectuation of the legislative purpose?" Would not such a construction "defeat the true intent and meaning" of the statute?

But we must go further and give full effect to the restrictive words "Except when otherwise expressly provided."

As we have already said, our Legislature has defined, and provided penalties for infraction, of more than two hundred crimes, exclusive of the so-called prohibitory law. In the latter law the punishment provided differs materially in its terms from other penalties. We take judicial notice of the fact that our Legislature, through increasing severity of punishment, has endeavored to stamp out the evils resulting from the manufacture and sale of intoxicating liquor. In 1917, Chapter 291, of the Public Laws, there was passed an act "To amend chapter one hundred and twenty-seven of the Revised Statutes, to make plain the penalties imposed under certain sections thereof." Again by Public Laws, 1923, 167, the act under which this petitioner was sentenced, the Legislature amended the law. In these amendments appear the feature not common to penalties for infraction of other criminal statutes, namely imprisonment and fine, together with an express provision that if fine and costs are not paid then the person convicted shall be further imprisoned for a definite period. This is materially different from a mere commitment to enforce payment of fine and costs, to which we have referred. "This term of imprisonment was apparently regarded by the law makers as the proper alternative in case of the non-payment of the fine," to borrow an expression from *Rollins* v. *Lashus*, 74 Maine, 218.

We are of opinion that this additional imprisonment, in default of payment of fine and costs, brings the situation well within the meaning of the words "Except when otherwise expressly provided." For this, and other reasons herein found, we are further of opinion that this construction of the statute conforms to the rules of construction already referred to, will best serve to effectuate the legislative purpose, and will not defeat the true intent and meaning of the enactment.

The mandate, therefore, will be,

*Release of petitioner denied.*