STATE OF MAINE
*vs.*
CARL SEABURG

Oxford.   Opinion, October 7, 1958.

*David R. Hastings,* for plaintiff.

*Berman & Berman,*
*Dow & Dow,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ.   SIDDALL, J., did not sit.

SULLIVAN, J.   The respondent was indicted for alleged violations of R. S. (1954), c. 134, § 12.   He demurred with accorded right to plead anew.   His demurrer was overruled and he excepts.

The indictment contains eight counts encompassing, over-all, accusations that the respondent had resided in, occupied and remained in, a certain house for the purpose of lewd-

ness, i.e., in the main, the taking of indecent liberties with male persons, and had engaged in such lewdness.

In support of his exceptions the respondent phrases his contentions in these words:

"This indictment is bad because the acts alleged as being criminal were not intended by the Legislature to make criminal private acts of alleged lewdness. The purpose and intention of the Legislature was to protect the public health by the elimination of commercialized vice."

Respondent maintains that R. S. (1954), c. 134, § 12 was originally enacted as P. L., 1919, c. 112 with an emergency preamble which manifests that the statute was health legislation adopted as a war measure against commercialized vice. He cites *State* v. *Morin,* 126 Me. 136, which says:

"In order to decrease the spread of so-called sexual diseases, Chapter 112 of the Public Laws of 1919 enacted that it should be unlawful for any person to permit any place, structure, building or conveyance owned by him or under his control to be used for the purpose of prostitution, lewdness or assignation with knowledge or reasonable cause to know that the same is, or is to be used for such purpose."

The defense urges that the statute here to be interpreted does not hold in its purview acts of "private" vice committed in his residence by a malefactor. Respondent avers that other statutory laws punish individuals for their "private" offenses against sexual continency and decency and that to consider c. 134, § 12 as affecting the respondent in this case would be to conclude that the Legislature had thus made dual crimes of every possible illegal sexual act and in some instances felonies of misdemeanors. He argues that, when an alleged criminal act is contrary to the intention of the Legislature and the very spirit of an act, there is no crime though the express words of the act seem to indicate that

there is. He directs attention to the severity of the punishment imposed by the statute as excessive for some crimes enumerated and as indicative that the Legislature contemplated only a deterrent against commercial or professional vice. He cites *State* v. *Day* (1933), 132 Me. 38, construing what is now R. S. (1954), c. 134, § 20. He invokes a strict interpretation of this penal act involved here and counsels that, if the State considers the respondent guilty of the crime of having resorted to indecent liberties, it indict him for each, detached offense rather than subject him to this massive prosecution only because all the acts alleged were conceivably performed in one place of committal.

There is no gainsaying that R. S. (1954), c. 134, § 12 was occasioned by vigilance in 1919 as to social diseases and health in the immediate wake of the active hostilities of a war. *State* v. *Morin* (1927), 126 Me. 136 *(supra)*. Nevertheless, the Legislature can be motivated by plural objectives in promulgating a law. The expressed intent of the lawmaking body is controlling. Neither the text nor the meaning of R. S. (1954), c. 134, § 12 limits the impact of the law to commercialized vice. Nor does sexual vice require commercialization to become a menace to public health in the communication or spread of venereal disease. By the inclusion of lewdness in its prohibitions and by its definition of lewdness "as any indecent or obscene act," R. S. (1954), c. 134, § 13, it is indicated that the Legislature was also comprehensively attempting to deter vice itself. It would be a drastic constriction of the purport of the language employed to conclude that the Legislature was singly dedicated to the prevention or containment of physical disease. There is nothing in the statute to indicate that the carrying on of commercialized vice upon the premises is an essential to the guilt of the respondent nor does the act require that for the conviction of the respondent more than an isolated act shall

have been alleged and committed. Compare *Rhodes* v. *State* (1945), (Ark.), 189 S. W. (2nd) 379, 380.

In *State* v. *Munsey* (1916), 114 Me. 408, 410, this court supplied the rule of construction:

> "From the foregoing rules, well supported by authorities, it is safe to say that in deciding upon a demurrer to a complaint or warrant charging a statutory offense, it is the first duty of the court to carefully examine the statute under which the complaint or indictment is drawn, with a view of ascertaining the intention of the Legislature and the evil which that body desired to correct. The next consideration is whether the Legislature expressed its intention in language sufficiently full, certain, and precise, so that the person of average intelligence who may be subject to the inhibition pronounced by the statute may understand and obey. If, when tested by the court, both examinations result affirmatively, and the complaint or warrant follows the language of such a statute, it should not be held defective upon captious or hypercritical grounds. The expressed will of the Legislature should be a chart to guide - - - - -"

In *Jenness* v. *State* (1949), 144 Me. 40, 46, this court quoted a norm for construing a penal statute:

> " 'The rule of strict construction of a penal law is subordinate to the rule of reasonable, sensible construction, having in view effectuation of the legislative purpose, and is not to be so unreasonably applied as to defeat the true intent and meaning of the enactment.' Violette v. Macomber, 125 Me. 432, 434; 134 A. 561, 562."

By R. S. (1954), c. 134, § 12 an added category of distinct criminal offenses was listed and created for the fundamental and accredited purposes of deterrence and punishment with rehabilitation where hopefully indicated and not only for

the selective and refined object of providing a health safeguard against commercialized vice.

> *The mandate must be:*
> *Exceptions overruled.*
> *Respondent may plead anew.*