1998 ME 166

**John UNDERWOOD, et al.**

v.

**CITY OF PRESQUE ISLE, et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 13, 1998.
Decided June 30, 1998.

---

**3.** The State established through the investigating officer that the defendant was not married.

Harold Stewart, II, Stewart Law Office, Presque Isle, for MSAD # 1.

Before ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

LIPEZ, Justice.

[¶ 1] John and Mary Underwood appeal from a judgment entered in the Superior Court (Aroostook County, *Pierson, J.*) affirming the City of Presque Isle Zoning Board of Appeals' approval of School Administrative District No. 1's (SAD # 1's) application for a special exception permit pursuant to the City's zoning ordinance and 30–A M.R.S.A. § 4353(2)(B) (1996 & Supp.1997) and finding no violation of the Freedom of Access Act ("FAA"), 1 M.R.S.A. §§ 401–410 (1989 & Supp.1997). The Underwoods contend that the court erred by finding that SAD # 1's proposed use of the property constituted a "school" or an "institution of an educational nature" within the meaning of the zoning ordinance's special exception provision and by finding that the Board's actions in approving SAD # 1's application for a special exception permit did not violate the FAA. Although we find no error in the Board's finding concerning the use of the property, we vacate the judgment and remand to the Superior Court with instructions to permit the introduction of evidence concerning the Board's alleged FAA violation.

## I.

[¶ 2] John and Mary Underwood own a house on Fleetwood Street in Presque Isle in a zoning district designated as a suburban residence zone. The Underwood property abuts property owned by SAD # 1 on State Street, on which SAD # 1 has operated the "Ag–Sciences and Natural Resources Educational Farm" ("Farm") since 1991.

[¶ 3] Although not expressly permitted by the City's zoning ordinance, SAD # 1's Farm has been authorized since 1991 by a special exception permit pursuant to the ordinance, which allows "schools and institutions of an educational nature" to operate in suburban residence zones. In its 1991 application for a special exception permit, SAD

Richard L. Currier, Currier & Trask, Presque Isle, for appellants.

Brent A. York, Phillips, Olore & Dunlavey, Presque Isle, for appellees (for City of Presque Isle Zoning Board).

# 1 stated that the Farm would be used as a "training and experimental area" for vocational students and high school biology and science students; that elementary and middle school students would use the Farm for nature walks and to observe agricultural activities; and that a produce stand would be open six days a week.

[¶ 4] In 1996 SAD # 1 applied for another special exception permit to construct a 3,000 square foot building on the State Street property. According to the application, the proposed building was needed to accommodate the Ag–Science program's greatly increased enrollment and would provide a storage area for farm equipment and supplies, a processing area, and a marketing area.[1]

[¶ 5] The Board considered SAD # 1's application at its October 15, 1996, public meeting. According to the minutes of this meeting, SAD # 1's attorney reviewed the conditions required for a special exception, locally referred to as the "A–R Form," and a Farm instructor answered questions about the proposal. Three Fleetwood Street homeowners, including John Underwood, expressed their concerns about traffic, buffering, signage, property devaluation, dust, child safety, drainage, and similar potential problems. Four local produce growers and florists expressed their concerns that the proposal would create unfair competition. The October 15 minutes also state that "some discussion was made about placing a chain across the road on Fleetwood when the farm was closed." The SAD # 1 proposal was tabled to the next Board of Appeals meeting "to obtain more information concerning the following: (1) buffering; (2) traffic; and (3) dust problem."

[¶ 6] When the Board reconvened at its November 12 public meeting, SAD # 1's attorney addressed the neighborhood residents' buffering, traffic, and dust concerns, and explained how the proposal advanced the school curriculum. The Underwoods' attorney presented evidence to show that the proposal constituted a "commercial venture" requiring a variance, not a special exception permit, and argued that the "A–R Form" conditions for a special exception had not been met. At the conclusion of this presentation of evidence, the Board voted to meet in executive session to discuss its "rights and duties" with counsel. After meeting privately for about twenty minutes, the Board voted to close the record until a "legal opinion" could be obtained with respect to SAD # 1's application.

[¶ 7] Following the receipt of a legal opinion from the Maine Municipal Association and a letter from the Underwoods' attorney outlining their legal arguments in opposition to SAD # 1's application, the Board once again reconvened at a public meeting on December 3. According to the minutes of the meeting, the Board immediately voted to meet in executive session "for consultation with City Attorney concerning its Rights and Duties." After approximately forty minutes the Board concluded its executive session and immediately voted publicly to approve SAD # 1's application for a special exception permit, subject to the following specific conditions: that the Farm's customers use State Street for access, not Fleetwood Street, and that Fleetwood Street be gated except during school hours for school personnel and students; that six-foot tall trees be planted to improve buffering; that the access road be made of asphalt; that the Farm process and sell only farm-grown items; that certain signage be erected; that retail space be limited to 600 square feet; and that retail sales

---

1. The application described the need for the proposed building as follows:

> [SAD # 1] requests relief from the [City's zoning ordinance] in order to construct a building at the existing ... greenhouse site. The building will be divided into three distinct areas, being a retail store, a processing area, and a garage area.
>
> Over the last two years, student enrollment in the agricultural educational program has increased greatly. With the importance of providing practical experience in this program,

> [SAD # 1] has strained the current methods of operating the farm. We need a facility, other than the greenhouse, that will allow for storage of our farm equipment and supplies in one place, provide a place for processing vegetables and fruits (some of which do not store well in the heat of the greenhouse), and provide a specific area for the marketing of the items processed. The new facility would also provide a safer environment for customers and students by changing the flow of traffic in and out of the area.

hours be restricted to 8:00 a.m. to 5:00 p.m., Monday through Saturday, May through December.

[¶ 8] Pursuant to M.R.Civ.P. 80B and 1 M.R.S.A. § 409(2) (1989), the Underwoods filed a complaint in the Superior Court seeking review of the Board's decision and alleging that the Board had violated the Freedom of Access Act, 1 M.R.S.A. §§ 401–410. The issues were submitted to the court on the record developed before the Board. The court affirmed the Board's decision and found no violation of the Freedom of Access Act. This appeal followed.

## II.

[¶ 9] The Underwoods first argue that the Board erred as a matter of law by determining that the proposed building would be used as a "school or an institution of an educational nature," within the meaning of the ordinance's special exception provision for property located within a suburban residence zone. In an appeal from the Superior Court's appellate review of actions taken by a municipal board of zoning appeals, we examine independently the record developed before the board to determine whether the board abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record. *See H.E. Sargent, Inc. v. Town of Wells,* 676 A.2d 920, 923 (Me.1996). Whether a proposed use falls within the terms of a zoning ordinance is a question of law. *See Cumberland Farms, Inc. v. Town of Scarborough,* 1997 ME 11, ¶ 3, 688 A.2d 914, 915 (citing *C.N. Brown Co. v. Town of Kennebunk,* 644 A.2d 1050, 1051 (Me.1994)).

[¶ 10] Although not expressly permitted within suburban residential zones, "schools and other institutions of an educational nature" may be authorized by the Board's approval of an application for a special exception. The ordinance does not define the phrase "schools and other institutions of an educational nature." The ordinance does provide, however, that "except where specifically defined herein, all words used in this Code shall carry their customary meanings." PRESQUE ISLE, ME. LAND USE & DEVELOPMENT CODE, ch. I, § V (1993); *see also Goodine v. State,* 468 A.2d 1002, 1004 (Me.1983) (the words of a statute which are not expressly defined "must be given their plain and natural meaning and should be construed according to their natural import in common and approved usage"). Common dictionary definitions of the words "school" and "educational institution" encompass a wide array of training environments designed to impart knowledge or skill. *Black's Law Dictionary,* for example, defines a "school" as "[a]n institution or place for instruction or education." BLACK'S LAW DICTIONARY 1206 (5th ed. 1979). The word "education," in turn, is defined broadly as follows: "Comprehends not merely the instruction received at school or college, but the whole course of training; moral, religious, vocational, intellectual, and physical. . . . Acquisition of all knowledge tending to train and develop the individual."[2] *Id.* at 461.

[¶ 11] Applying these broad, common-usage definitions to SAD # 1's proposal, we conclude that the proposal involves a "school or institution of an educational nature," within the meaning of the ordinance. The record establishes that the Farm teaches practical agricultural skills, one of which is marketing, through an organized curriculum and a staff of instructors. Although the Farm has grown in size since its inception in 1991, such growth does not necessarily change its overarching educational mission. Moreover, contrary to the Underwoods' contention, the fact that the Farm takes in revenue while teaching its students how to market their products does not necessarily mean that it is an impermissible "commercial venture." Rather, the record supports SAD # 1's contention that the marketing aspect of the Farm is subordinate to and an integral part of the predomi-

---

**2.** Similarly, *Black's Law Dictionary* defines an "educational institution" in pertinent part as follows:

A school, seminary, college, university, or other educational establishment, not necessarily a chartered institution. As used in a zoning ordinance, the term may include not only buildings, but also all grounds necessary for the accomplishment of the full scope of educational instruction. . . .

BLACK'S LAW DICTIONARY 461 (5th ed. 1979).

nant educational goals of the vocational training program. *See, e.g., Stoller v. Town of North Hempstead,* 40 A.D.2d 867, 337 N.Y.S.2d 946 (1972). Accordingly, the court did not err in affirming the Board's legal conclusion that the Farm proposal represented a "school or institution of an educational nature," within the meaning of the ordinance.

## III.

[¶ 12] The Underwoods also argue that the Board engaged in impermissible deliberations concerning the merits of SAD # 1's application and approved the application while in executive sessions, in violation of the Freedom of Access Act, 1 M.R.S.A. §§ 401–410. Pursuant to section 403 of the Act, all public proceedings [3] must be open to the public, except as provided by statute or by section 405. *See* 1 M.R.S.A. § 403 (1989). The requirement that all public proceedings be open to the public reflects the Legislature's intent in adopting the Act, set forth at section 401:

> The Legislature finds and declares that public proceedings exist to aid in the conduct of the people's business. It is the intent of the Legislature that their actions be taken openly and that the records of their actions be open to public inspection and their deliberations be conducted openly....

1 M.R.S.A. § 401 (1989). Section 401 further provides that the Act "shall be liberally construed and applied to promote its underlying purposes and policies as contained in the declaration of legislative intent." *Id.* Section 409(2) empowers the Superior Court after a trial *de novo* to enter an order declaring an improper administrative action to be null and void.[4] *See id.* § 409(2).[5]

[¶ 13] Section 405(6) of the Act sets forth a list of the circumstances in which executive sessions are permissible. *See* 1 M.R.S.A. § 405(6) (1989). Included in section 405(6)'s list of exceptions to the general rule requiring public deliberations is the following:

> **6. Permitted deliberation.** Deliberations may be conducted in executive sessions on the following matters and no others:
>
> > E. *Consultations between a body or agency and its attorney concerning the legal rights and duties of the body or agency,* pending or contemplated litigation, settlement offers and matters where the duties of the public body's counsel to his client pursuant to the code of professional responsibility clearly conflict with this subchapter or where premature general public knowledge would clearly place the State, municipality or other public agency or person at a substantial disadvantage.

*Id.* § 405(6)(E) (emphasis added). Section 405's exceptions to the Act's public deliberation requirement must be strictly construed. *See Guy Gannett Publ'g Co. v. University of Maine,* 555 A.2d 470, 471 (Me.1989).

3. The term "public proceeding" is defined as "the transactions of any functions affecting any or all citizens of the State by any of the following: ... Any board, commission, agency or authority of any county, municipality, school district or any regional or other political or administrative subdivision." 1 M.R.S.A. § 402(2) (Supp.1997).

4. The Underwoods' complaint also sought the imposition of a monetary civil penalty pursuant to section 410, which provides in pertinent part:

> **Violations.** For every willful violation of this subchapter, the state government agency or local government entity whose officer or employee committed the violation shall be liable for a civil violation for which a forfeiture of not more than $500 may be adjudged.

1 M.R.S.A. § 410 (1989). Only the Attorney General or his or her representative, however, may enforce the Freedom of Access Act by seeking the imposition of a fine. *See Scola v. Town of Sanford,* 1997 ME 119, ¶ 7, 695 A.2d 1194, 1195; *Cook v. Lisbon Sch. Comm.,* 682 A.2d 672, 680 (Me.1996).

5. Section 409(2) provides in pertinent part:

> **Actions.** If any body or agency approves any ordinances, orders, rules, resolutions, regulations, contracts, appointments or other official action in an executive session, this action shall be illegal and the officials responsible shall be subject to the penalties hereinafter provided. Upon learning of any such action, any person may appeal to any Superior Court in the State. If a court, after a *trial de novo,* determines that this action was taken illegally in an executive session, it shall enter an order providing for the action to be null and void....

1 M.R.S.A. § 409(2) (emphasis added).

[¶ 14]   To justify its executive sessions on November 12 and December 3, the Board stated in the record that the meetings were being convened to enable it to consult privately with its attorney about its "legal rights and duties."   On appeal, the Board argues that the Underwoods failed to present any evidence to show that the executive sessions were not conducted for this proper purpose. The Underwoods contend, however, that the Board impermissibly discussed and deliberated the merits of SAD # 1's proposal during the executive sessions that were held for the stated purpose of consultation and, as a practical matter, approved the proposal during those sessions.   To support this contention, the Underwoods assert that no public deliberation or discussion by the Board occurred regarding SAD # 1's application, and that the Board therefore must have discussed the merits of the proposal during the executive sessions and approved the proposal before resuming the public meeting.

■  [¶ 15]   In order to evaluate these contentions, we must first consider the scope of section 405(6)(E)'s exception to the general rule prohibiting executive sessions.   Section 405(6)(E) authorized the Board to consult privately with its attorney about its legal right or duty to grant or to deny SAD # 1's application for a special exception permit, and about its legal right or duty to impose conditions on the grant of a special exception permit.   During this consultation, the Board was authorized to engage in a discussion with its attorney about those legal rights and duties.   It was not authorized, however, to deliberate on the merits of SAD # 1's proposal after concluding its consultation with counsel.   *See id.* § 405(6) (stating that "[d]eliberations may be conducted in executive sessions on the following matters *and no others* ") (emphasis added).

■  [¶ 16]   We recognize that it may be difficult at times for a board convening in executive session pursuant to section 405(6)(E) to determine when its permissible consultation with counsel has ended and impermissible deliberations on the merits of a matter have begun.   We cannot offer any bright line to eliminate that difficulty.   We can, however, remind public boards and agencies of the Legislature's declaration in the Freedom of Access Act that "their deliberations be conducted openly," and that the Act "be liberally construed . . . to promote its underlying purposes."   1 M.R.S.A. § 401. Consistent with these declarations, any statutory exceptions to the requirement of public deliberations must be narrowly construed. The mere presence of an attorney cannot be used to circumvent the FAA's open meeting requirement.   *See City of Prescott v. Town of Chino Valley,* 166 Ariz. 480, 803 P.2d 891, 896 (1990) (en banc).

[¶ 17]   We turn next to the record before us in an effort to determine whether the Board's executive sessions fell within section 405(6)(E)'s exception to the general rule prohibiting executive sessions.   Although we have not previously addressed the proper allocation of the burden of proof regarding executive sessions that are alleged to be illegal, we must do so here to evaluate the FAA claim.   The Board, while making no explicit argument about which party bears the burden of proof, contends that the Underwoods have failed to present any evidence to show that the meetings were not conducted for the proper purpose of assessing its "legal rights and duties" within the meaning of section 405(6)(E).   Thus, they implicitly assign to the Underwoods the burden of proving the illegality of the executive session deliberations and actions.   The Board also argues that the Underwoods were required to file a timely motion for a trial of the facts pursuant to M.R.Civ.P. 80B(d) if they wished to introduce evidence outside the record developed before the Board.   We disagree with both contentions.

[¶ 18]   In considering the burden of proof issue, the facts of the instant case must be distinguished from those of *Marxsen v. Board of Directors, M.S.A.D. No. 5,* 591 A.2d 867 (Me.1991).   In *Marxsen,* the plaintiff alleged that the official action on the renewal of her contract by the school board took place, as a practical matter, during a secret meeting in violation of the FAA.   *See id.* at 870.   There was nothing in the record, however, to establish that a clandestine meeting actually took place.   *See id.* at 871.   We affirmed the trial court's dismissal of her

claim, reasoning that she had failed to present evidence to establish that an executive session occurred. *See id.* In the instant case, by contrast, the record itself establishes that executive sessions occurred. Although *Marxsen* sensibly assigned to the plaintiff the burden of proving that an executive session occurred, it did not stand for the broader proposition that the plaintiff has the additional burden of proving that an improper discussion and approval took place at the closed meeting. *See City of Prescott*, 803 P.2d at 897 n. 4. To the contrary, "[r]equiring a plaintiff to plead and prove specific facts regarding alleged violations that are taking place in secret is a circular impossibility." *Fisher v. Maricopa County Stadium Dist.*, 185 Ariz. 116, 912 P.2d 1345, 1351 (App.1995).

[¶ 19] If the FAA is to be liberally construed and applied to promote its underlying purposes and policies, *see* 1 M.R.S.A. § 401, the burden should not be upon the party asserting a violation to establish what the public body did and said at a meeting from which the party was excluded. Rather, a public body charged with violating the terms of the FAA during an executive session has the burden of proving that its actions during the executive session complied with an exception to the FAA's opening meeting requirement. *See City of Prescott*, 803 P.2d at 897 n. 4; *see also Common Council v. Peru Daily Tribune, Inc.*, 440 N.E.2d 726, 729 (Ind.App.1982) (stating in discussion of open meeting law that "exceptions to a statute and its operation should be strictly construed by placing the burden of proving the exception upon the party claiming it"); *News & Observer Publ'g Co. v. Interim Bd. of Educ.*, 29 N.C.App. 37, 223 S.E.2d 580, 586–87 (1976) (exceptions to open meeting law should be strictly construed and "those seeking to come within the exceptions should have the burden of justifying their action"); *Town of Rocky Hill v. Freedom of Info. Comm'n*, 20 Conn.App. 671, 569 A.2d 1149, 1150 (1990) ("The burden of establishing the applicability of an exemption to [the rule favoring disclosure] rests squarely on the party claiming the exemption.").

[¶ 20] We next address the practical question of the method by which the parties to an FAA claim may introduce evidence outside the record in the Superior Court proceedings. Relying on our 1991 decision in *Marxsen*, the Board contends that M.R.Civ.P. 80B(d) requires a party seeking review of governmental action pursuant to 1 M.R.S.A. § 409(2) to file within thirty days after the complaint is filed a motion for a trial of the facts if that party wishes to introduce evidence that does not appear in the record of the governmental action and is not stipulated.[6] In light of our more recent decision in the analogous case of *Service & Erection Co. v. State Tax Assessor*, 684 A.2d 1 (Me.1996), we disagree.

[¶ 21] In *Service & Erection*, the plaintiff ("S & E") filed a complaint pursuant to 36 M.R.S.A. § 151 and M.R.Civ.P. 80C seeking review of the state tax assessor's denial of its motion for reconsideration of an assessment of use tax.[7] *See id.* at 1. The assessor filed a successful motion to dismiss, arguing that S & E's failure to file a motion for the taking of additional evidence as required by M.R.Civ.P. 80C(e) made it impossible for S & E to meet its burden of proof.[8] *See id.* We

6. M.R.Civ.P. 80B(d) provides in pertinent part:
   If the court finds on motion that a party to a review of governmental action is entitled to a trial of the facts, the court shall order a trial to permit the introduction of evidence that does not appear in the record of governmental action and that is not stipulated. Such motion shall be filed within 30 days after the complaint is filed. The failure of a party to file said motion shall constitute a waiver of any right to a trial of the facts....

7. 36 M.R.S.A. § 151 (Supp.1997) provides in pertinent part:
   The State Tax Assessor's decision on reconsideration constitutes final agency action that is subject to review by the Superior Court in accordance with the Maine Administrative Procedures Act.... *The Superior Court shall conduct a de novo hearing and make a de novo determination of the merits of the case.* It shall make its own determination as to all questions of fact and law.
   Id. (emphasis added).

8. Rule 80C(e) provided in pertinent part:
   A party who intends to request that the reviewing court take additional evidence ... shall file a motion to that effect.... *On a petition for review under 36 M.R.S.A. § 151, the motion shall be filed within 40 days of the filing of the*

vacated the dismissal. *See id.* at 2. Because 36 M.R.S.A. § 151 expressly requires that the Superior Court conduct a "de novo hearing and make a de novo determination" of the merits of the case, we reasoned that the Superior Court "no longer functions in an appellate capacity . . . [but rather] functions as the forum of origin for a determination of both facts and law." *Id.* at 2 (quoting *Enerquin Air, Inc. v. State Tax Assessor,* 670 A.2d 926, 928 (Me.1996)). When the Superior Court is the forum of origin pursuant to statute, Rule 80C(e)'s requirement that a party file a motion for the taking of additional evidence is inconsistent with the statute's expressed purpose and therefore is inapplicable. *See id.*

■ [¶ 22] *Service & Erection*'s rationale has equal cogency in the context of a claim alleging an FAA violation brought pursuant to 1 M.R.S.A. 409(2). Although section 409(2) refers to an "appeal to any Superior Court in the State" and states that such "[a]ppeals" of alleged FAA violations "shall be privileged in respect to their assignment for trial . . .," section 409(2) expressly provides for a "trial de novo" of the alleged FAA violation. Thus, in its review of the actions of a governmental board or agency pursuant to the FAA, the Superior Court is the forum of origin for a determination of both facts and law with respect to the alleged violation and does not function in an appellate capacity. *See supra* note 5. Accordingly, pursuant to *Service & Erection,* Rule 80B(d)'s requirement that a party move for a trial of the facts to permit the introduction of evidence outside the record is inapplicable to an alleged violation of the FAA brought pursuant to section 409(2). *See supra* note 6. To the extent that *Marxsen* reaches a contrary conclusion, it is overruled.

[¶ 23] Applying the foregoing principles to this case, we are unable to determine on the basis of the record before us whether the Board's November 12 and December 3 executive sessions violated the FAA. Each of the parties relies solely on the record developed before the Board to support its respective position. Although the Underwoods are correct in their contention that the record reveals no evidence that the Board engaged in any public discussion of the reasons for and against the SAD # 1 proposal or for and against the imposition of specific conditions, we decline to speculate about the substance of the Board's discussions during its executive sessions. The parties did not have the benefit of the burden of proof analysis set forth in this case. Indeed, our prior opinions may have suggested that the Underwoods had the burden of proving the illegality of the executive session deliberations and actions. Because we have articulated the proper allocation of the burden of proof for the first time in this opinion, fairness requires that the Board be given the opportunity to meet its burden by presenting evidence outside the existing record, whether by affidavit or otherwise, to show that its November 12 and December 3 executive sessions concerned only its legal rights and duties, within the meaning of section 405(6)(E). The Underwoods should have an opportunity to challenge that evidence or to present additional evidence if they wish to do so.[9]

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with the decision herein.

---

petition. The failure of a party to file such a motion shall constitute a waiver of any right to the taking of any additional evidence. M.R.Civ.P. 80C(e) (amended March 1, 1998) (emphasis added). Effective March 1, 1998, the Supreme Judicial Court amended Rule 80C(e) to delete the underscored language.

9. We leave to the trial court the decisions on the manner in which this evidence should be presented.