STATE OF MAINE                                    SUPERIOR COURT
YORK, ss                                            CIVIL ACTION
                                            DOCKET NO. CV-15-269


RENEE LEGRAND,

            Plaintiff

v.                                                    ORDER

ROBERT M.A. NADEAU, York County
Probate Judge, et al.,

            Defendants


Before the court are motions on behalf of York County and third party defendants Gregory Zinser and Carol Lovejoy to dismiss the cross claims and third party claims asserted in Judge Nadeau's Amended Answer. York County argues that the cross-claims against it do not belong in this action and fail to state a claim. Third party defendants Zinser, who is the York County Manager, and Lovejoy, who is the Register of Probate, contend that they have been improvidently joined under M.R.Civ.P. 14 and that the third party complaint fails to state a claim.

Oral argument was held on those motions on January 5, 2016. For the reasons set forth below, Judge Nadeau's cross claim and his third-party claims are dismissed.


Count One of Cross Claim – Court Funding

In Count One of the cross-claim contained in Judge Nadeau's Answer to the Amended Complaint, Judge Nadeau is seeking injunctive relief requiring York County to provide "funding . . . consistent with that of full time Maine judges" so as to comply with what he asserts is the County's statutory obligation to ensure that the judicial functions of the probate court will be

available and open to the public whenever other courts in Maine are open. Cross-Claim Count I, "Wherefore Clause" (a).[1]

Historically probate judges in Maine are different from other judges in that they are elected and have always served on a part-time basis. In recognition of this, the Code of Judicial Conduct provides that probate judges are excused from certain of the rules applicable to other judges. See Code of Judicial Conduct, Coverage and Effective Date, § I.B(1) (probate judges required to comply with certain canons "only while serving as a judge"); § I.B(2) (probate judges not required to comply with Rule 3.10, which provides that judges may not practice law).

It has been contemplated that at some point probate judges will become full time, but that has not yet happened. Art. VI, § 6 of the Maine Constitution provides for the election of the judges in the existing Probate Court system. In 1967 Art. VI § 6 was repealed, with the repeal to be effective "at such time as the Legislature by proper enactment shall establish a different Probate Court system with full-time judges." *See* Amendment CVI; Chapter 77, Resolves of the 103rd Legislature, 1967. In the ensuing 49 years, the Legislature has not established a different Probate Court System with full time judges.

Probate judges are also anomalous in that they are state officers even though they are paid by the county. *See Hart v. County of Sagadahoc*, 609 A.2d 282, 284 (Me. 1992). Title 4, M.R.S. § 301 states, "Judges of probate in the several counties are entitled to receive annual salaries as set forth in Title 30-A, section 2." Although there is no longer a direct reference to

---

[1] In that count Judge Nadeau also seeks injunctive relief to obtain litigation defense insurance, more security staff, various security features, and a larger courtroom. The court understands that the issue of litigation insurance has now been resolved because the State is providing Judge Nadeau with funding to retain outside counsel to defend the claims brought by plaintiffs. The other issues are controlled by the same principles as Judge Nadeau's general claim for more funding.

probate judge salaries in 30-A M.R.S. § 2,[2] the parties do not dispute that the salaries of probate

court judges are determined as part of the county budget.

How much to pay probate judges – which is partially a function of how many court days

per month they are expected to work as judges – is a non-justiciable issue. To the extent that

Judge Nadeau is seeking a judicial order that his position be made full-time, that would be

inconsistent with the constitutional amendment repealing Art. VI, § 6 once the Legislature

establishes a Probate Court with full-time judges, which it has not done.

Judge Nadeau bases his argument on 4 M.R.S. § 303, which states

> Probate Court shall always be open in each county for all matters
> over which it has jurisdiction, except upon days on which by law
> no court is held, but it shall have certain fixed days and places to
> be made known by public notification thereof in their respective
> counties to which all matters requiring public notice shall be made
> returnable, except as otherwise ordered by the judge.

That statute, which has existed in some form since at least 1954, *see* R.S. 1954, c. 153 § 5, is not

a statutory command that probate judges are entitled to full time status. If it were, there would be

no reason to have postponed the repeal of Art. VI § 6. Read in its entirety, the statute simply

gives probate judges the flexibility to schedule their cases at any time, rather than confining their

work to fixed terms and preventing them from hearing evidence at any other times. *See Estate of

Knapp,* 145 Me. 189, 192, 74 A.2d 217, 219 (1950).[3]

---

[2] Until 1995, 30-A M.R.S § 2(1-B) specifically set the salary of the York County probate judge. For FY 1994, for example, that salary was $ 14,320. *See* P.L. 1993, c. 653 § 2. In 1993 the Legislature approved the establishment of the York County Budget Committee, and legislative approval of the York county budget was no longer required. P.L. 1993 c. 623. Thereafter 30-A M.R.S. § 2 was amended to delete any specific reference to the salary of the York County probate judge. P.L. 1995 c. 500 §1.

[3] In other contexts, language that courts "shall always be open" is intended to allow pleadings, documents, and court orders to be filed at any time. *E.g.,* M.R.Civ.P. 77(a).

To the extent that Judge Nadeau is seeking additional payment based on the contention that he needs additional court time to manage his docket, the court has no legal basis to interfere in the budgetary and political decisions made by the County. This is true whether or not those decisions are correct. Judge Nadeau has appended certain statistics as Exhibit C to his cross claim, and those statistics demonstrate that at least based on 2014 budgetary figures, he is currently the second highest paid probate judge in the state behind only the probate judge in the state's most populous county.

Indeed, the determination of a probate judge's salary meets certain of the hallmarks of a nonjusticiable "political question" – specifically

> A lack of judicially discoverable and manageable standards for resolving [the issue]; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government . . .

*Baker v. Carr*, 369 U.S. 186, 217 (1962). Salary and funding decisions with respect to probate judges is an issue that the political branches of government, not the courts, must resolve.

This conclusion is consistent with the decision of the U.S. Court of Claims in *Atkins v. United States*, 556 F.2d 1028 (Ct. Cl. 1977). In that case the court concluded that a claim that Congress had illegally diminished the salaries of federal judges was not nonjusticiable under the "political question" doctrine. 556 F.2d at 1052-54. However, the court also ruled that "the initial policy determinations regarding the real compensation that judges should receive would always remain with the political branches." 556 F.2d at 1054.

Like the U.S. Constitution, the Maine Constitution contains language that judges' compensation "shall not be diminished during their continuance in office," Me. Const. Art. VI §

4

2. In this case Judge Nadeau is not contending that his compensation has been diminished. Instead he has admitted that the Commissioners raised his annual salary to $ 54,206. Amended Answer ¶ 8 (admitting paragraph 11 of the amended complaint). To the extent that he is seeking additional salary and court funding to provide more court days or for any other reason, count one of his cross-claim fails to state a cognizable claim.

Count Two of Cross Claim and Third Party Claim against Zinser and Lovejoy – "Interference with Supervisory Authority"

In Count Two of his Cross Claim against the County and in his Third Party Complaint against County Manager Zinser and Register of Probate Lovejoy, Judge Nadeau seeks an injunction preventing the County, Zinser, and Lovejoy from interfering with his supervision and management of the Register and her staff and requiring that he be kept informed of all matters affecting the operations of the York County Probate Court.

Looking at the factual allegations in these counts, it is apparent that they primarily concern Judge Nadeau's dissatisfaction with the Register of Probate's and the County's position that the Register, not the Probate Judge, shall manage the staff of the registry of probate. The Register is independently elected by the voters of York County, and the Legislature has specified that the Register has specific statutory duties. Me. Const. Art. VI, § 6; 18-A M.R.S. §§ 1-501, 1-503 – 1-505.

While 18-A M.R.S. § 1-305 provides in pertinent part that "[t]he register shall be subject to the supervision and authority of the judge of the court in which such register serves," nothing in the statute gives a probate judge authority to manage the register's staff. Moreover, the court is aware of no legal authority for the proposition that the County Commissioners and County

5

Manager cannot express their views as to the effect of collective bargaining contracts and other issues with respect to the management of the register's staff. The register of probate, unlike the probate judge, is a county officer, *see* 30-A M.R.S. § 1(3), and the members of her staff are county employees. Under those circumstances it is inevitable that administrative and budgetary issues will arise in which the County Commissioners and County Manager will become involved. In all such issues there is the potential for disagreement – although it is highly unfortunate that the level of disagreement is so significant between Judge Nadeau, the County, the County Manager, and the Register.

The short answer to Judge Nadeau's claims against the County and County Manager Zinser is that under the circumstances of this case, there is no legally enforceable right to be free of alleged "interference." Accordingly, count two of the cross claim and the third party complaint against Zinser fail to state a claim upon which relief may be granted.

Judge Nadeau's third party complaint against Resister Lovejoy also fails to state a cognizable claim. First, the statutory language providing that the Register is subject to the probate judge's supervision and authority, 18-A M.R.S. §1-305, is the second sentence of a provision that specifically refers to probate records. It is not clear that the statutory language is intended to give a probate judge general authority over the register of probate in all respects. However, even assuming that general authority exists, there is no allegation in the complaint that the Register has refused to implement any of Judge Nadeau's scheduling decisions. The pleadings in this case demonstrate that she has implemented Judge Nadeau's scheduling changes even though she disagrees with them.

18-A M.R.S. § 1-305 cannot be read to require that Register Lovejoy, an independently elected county official, has no option except to express unqualified agreement with Judge

6

Nadeau's scheduling decisions and not offer any dissenting views. To the extent that Judge Nadeau's claim that Lovejoy is interfering with his authority is intended to stifle dissent on Register Lovejoy's part, it does not state a cognizable claim. To the extent that he is instead seeking a general declaration as to the extent of his authority as judge of probate, the court cannot decide that issue in the abstract.[4]

Finally, to the extent that Judge Nadeau is complaining that Lovejoy is failing to adequately perform her duties as Register, 18-A M.R.S. §§ 1-507 and 1-508 provide a specific procedure by which a probate judge may address alleged deficiencies in the performance of the Register. The existence of that statutory remedy indicates that Judge Nadeau has a remedy at law, which precludes his claim for injunctive relief.

Judge Nadeau's third party complaint against Zinser and Lovejoy is subject to dismissal for an additional reason. M.R.Civ.P. 14(a) allows a defendant to assert claims as a third party plaintiff against a person "who is or may be liable to such third party plaintiff for all or part of the plaintiff's claim against the third party plaintiff." In this case the plaintiff (Renee LeGrand) is seeking declaratory relief against Judge Nadeau based on the allegation that he made retaliatory schedule changes that deprived LeGrand of due process and her constitutional right to access to the courts. The court is not aware of any authority that a third party defendant can be brought into litigation that only seeks declaratory or injunctive relief. Even overlooking that issue, Nadeau is not alleging that Zinser or Lovejoy required him to adopt the schedule that LeGrand is challenging. The court can see no way in which, if LeGrand prevails, Zinser or Lovejoy would be responsible to Nadeau for the declaratory relief sought by LeGrand.

---

[4] Judge Nadeau's claims in Count Two of his cross claim and in his third party complaint against Zinser and Lovejoy are reminiscent of a claim raised in *York County Probate Court v. Atwood,* No. CV-03-41 (Superior Ct. York) as to who was the "head" of the York County Probate Court at official meetings, an issue which the court (Studstrup, J.) found to be nonjusticiable. Order dated January 13, 2005, reported at 2005 Me. Super. LEXIS 16.

7

## Count Three – Unpaid Vacation Time

In Count Three of his cross claim Judge Nadeau contends that he is entitled to recover for 60.52 hours of "Paid Time Off" available to part-time county employees under the County's personnel manual. On this issue the County argues that Judge Nadeau has only been sued in his official capacity and therefore cannot assert a cross-claim in his personal capacity. The court does not have to reach this issue because the unpaid vacation claim is legally insufficient in any event. As discussed above, Judge Nadeau is not a county officer or employee but is a state officer whose salary happens to be paid by the County. His claim that he should be treated as a part-time county employee for purposes of "Paid Time Off" fails to state a claim.

In addition, the unpaid vacation claim does not arise out of the same "transaction or occurrence" that is the subject of LeGrand's claim against Judge Nadeau and is therefore not a proper subject for a cross-claim under M.R.Civ.P. 13(g).

## Count Four – Open Meetings Violation

In Count Four of his Cross-Claim Judge Nadeau contends that on various unspecified occasions the County Commissioners have engaged in executive sessions regarding his employment without complying with the notice and participation requirements of the Freedom of Access Law, 1 M.R.S. §§ 405(4), 405(5), and 405(6)(A). The parties strenuously disagree as to the viability of this claim,[5] but the court finds that there are two reasons this claim cannot proceed, at least as part of this action.

---

[5] Part of that disagreement concerns the interpretation of the Law Court's decision in *Underwood v. City of Presque Isle,* 1998 ME 166, 715 A.2d 148. To the extent that Judge Nadeau is contending that there have been clandestine executive sessions, he would have the initial burden of demonstrating that those occurred. *Underwood,* 1998 ME 166 ¶ 18, citing *Marxsen v. MSAD 5,* 591 A.2d 867, 871 (Me. 1991). If the existence of a closed session has been established, however, the defendant has the burden of proving that its actions in executive session complied with the Freedom of Access law. *Underwood,* 1998 ME 166

8

The first is that, as noted above, a cross-claim has to arise out of the same "transaction or occurrence" that is the subject of the original action. M.R.Civ.P. 13(g). Judge Nadeau is complaining about allegedly improper executive sessions throughout his tenure, Cross Claim ¶ 42, but he does not allege that these arise out of the same transaction or occurrence as the schedule changes that are the subject of plaintiff's complaint.

Second, as the Law Court has noted, the Freedom of Access law provides "a very narrow choice of remedies in circumstances where violation of its limits on executive sessions are found." *Lewiston Daily Sun v. MSAD 43*, 1999 ME 143 ¶ 11, 738 A.2d 1239. Official actions taken in violation of the executive session rules may be declared null and void, and the Attorney General may seek civil penalties. *Id.* In his cross-claim there is no official action that Judge Nadeau is seeking to have declared null and void. His generalized complaint about improper executive sessions that have allegedly occurred in the past and that he believes will continue in the future fails to state a claim.

Count Five and Third Party Claim against Zinser and Lovejoy – Hostile Work Environment

The final count in Judge Nadeau's cross-claim against York County seeks damages from the County for creating a "hostile work environment." The same claim is incorporated in his third party complaint against Zinser and Lovejoy.

Once again, the issues he is raising do not arise from the same transaction or occurrence as the subject of plaintiff's complaint under Rule 13(g) and are therefore not the proper subject of a cross-claim. They are also not the proper subject of a third party complaint because Zinser

---

¶¶ 18-19. Finally, when a plaintiff is arguing that a decision should be vacated because of an improper closed session, the plaintiff has 30 days from the time he or she learns of the closed session in which to seek redress under Rule 80B. *E.g., Palmer v. Portland School Committee,* 652 A.2d 86, 89 (Me. 1995).

9

and Lovejoy cannot be found liable to Judge Nadeau for the declaratory relief sought by LeGrand based on Judge Nadeau's scheduling changes.

In any event, the short answer to count five of the cross-claim is that hostile work environment claims are employment discrimination claims based on membership in a protected class under the Maine Human Rights Act. *Watt v. UniFirst Corp.,* 2009 ME 47 ¶ 22, 969 A.2d 897. Judge Nadeau does not allege that he was subjected to a hostile work environment based upon gender, age, race, color, sexual orientation, physical or mental disability, religion, ancestry or national origin. 5 M.R.S. § 4571.

Count Five also refers to the Whistleblowers Protection Act. However, Judge Nadeau has not identified any report or activity that would constitute protected activity under the Whistleblowers Protection Act. *See* 26 M.R.S. § 833(1)(A)-(F). All of the actions protected under § 833(1)(A)-(F) are actions taken by an "employee." Judge Nadeau is not a county employee. His disputes with York County as to whether the County should give him more court time and more compensation and his disputes with the County over the management of the Register's office are policy disputes between elected officials.

For the foregoing reasons, Count Five of the Cross-Claim fails to state a cognizable claim.

The entry shall be:

The motion by York County to dismiss defendant's cross claim and the motion by third party defendants Zinser and Lovejoy to dismiss defendant's third party complaint are granted. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February 12, 2016

Thomas D. Warren
Justice, Superior Court

10

STATE OF MAINE
YORK, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-15-269

RENEE LEGRAND,

       Plaintiff

v.

                                ORDER

ROBERT M.A. NADEAU, York County
Probate Judge, et al.,

       Defendants

Before the court is Judge Nadeau's motion to dismiss the complaint filed by plaintiff Renee LeGrand as class representative and his motion to compel a legal defense and reimbursement from York County.

For the reasons set forth below and those stated on the record at the oral argument held on January 5, 2016, both of those motions are denied.

Judicial Immunity

The motion to dismiss is based on a claim of judicial immunity.

At the outset, the U.S. Supreme Court ruled in *Pulliam v. Allen*, 466 U.S. 522 (1984), that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in [his] judicial capacity." 466 U.S. at 542. The result is that under federal law immunity protects judicial officers from actions for damages, not actions seeking equitable relief.

Following the *Pulliam* decision, Congress amended 42 U.S.C. § 1983 to add the following language:

> in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief

> shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983, as amended in 1996 by Pub. L. No. 104-317, 110 Stat. 3847 § 309(c).

In this case LeGrand's amended complaint seeks declaratory relief in the first instance on her section 1983 claim. The language of the 1996 amendment to section 1983 demonstrates that, at a minimum, declaratory relief for actions or omissions by judicial officers is available under section 1983. As a result, LeGrand's section 1983 claims are not barred by judicial immunity or by the 1996 amendment to section 1983.

In addition, even in actions where damages have been sought, the U.S. Supreme Court has drawn a distinction between judge's actions which are judicial in nature and those which are administrative. *Forrester v. White*, 484 U.S. 219, 227 (1988). Administrative actions taken by a judge are not entitled to absolute judicial immunity. 484 U.S. at 229.

While the court is reluctant to be cast into the role of reviewing scheduling decisions made by another judicial officer, it is constrained to conclude that the specific scheduling decisions challenged in this case appear to be administrative rather than adjudicatory in nature. While scheduling decisions made with respect to individual cases – e.g., whether the parties are ready for trial, whether requests for continuances should or should not be honored, how many days of trial or hearing time should be allotted – are necessarily part of a judge's adjudicative function, the decisions challenged by LeGrand relate to the overall scheduling of court time and not to the adjudication of individual cases.

The court is also keenly aware of the difficulty of scheduling cases in situations where judicial resources are scarce. However, that issue goes to the merits of whether LeGrand can prove that Judge Nadeau's scheduling decisions were not designed for that purpose.

2

Accordingly, because only equitable relief is sought and because the actions challenged appear to be administrative in nature, Judge Nadeau's motion to dismiss LeGrand's section 1983 claim based on judicial immunity is denied.[1]

Motion for Legal Defense and Reimbursement from York County

Judge Nadeau's emergency motion to compel York County to provide him with a legal defense and reimbursement for legal expenses must be rejected based on the Law Court's decision in *Hart v. County of Sagadahoc*, 609 A.2d 282 (Me. 1992). The *Hart* case also involved a claim for reimbursement of legal expenses by a sitting probate judge, and the Law Court found that there was no common law right to obtain reimbursement for legal expenses. Crucially, it also ruled that a probate judge "is not a county officer" even though counties are required to pay probate judges' salaries. 609 A.2d at 284.

Judge Nadeau now argues that *Hart* has been superseded by amendments to 30-A M.R.S. § 1(4) and to the Maine Tort Claims Act. However, nothing in either of those statutes as they have been amended establishes, contrary to the ruling in *Hart*, that probate judges are members of county government within the meaning of 30-A M.R.S. § 1(4) or are county employees within the meaning of 14 M.R.S. § 8102(1).

*Hart* in fact suggests that probate judges are state officers rather than county officers. *See* 609 A.2d at 284. Judge Nadeau may therefore have a claim to have his legal defense provided by the State. *See Kennedy v. State*, 1999 ME 85, 730 A.2d 1252. This may depend on whether 14

---

[1] The court reserves decision on whether LeGrand's equitable claims under the Maine Constitution are barred by judicial immunity as that doctrine exists under Maine law. In addition, there is a question of whether those claims can be asserted where they do not appear to fall within the scope of the Maine Civil Rights Act, 5 M.R.S. § 4682.

3

M.R.S. § 8112 applies to claims for equitable relief. In any event, the State is not a party to this action and would be entitled to be heard on those issues.

Similarly, Judge Nadeau may have a claim to have his legal defense provided by the risk management pool maintained by the Maine County Commissioners Association. That also may depend, at least in part, on whether the County Commissioners' risk pool covers the defense of probate judges in actions for equitable relief – an issue that cannot be decided in the absence of the County Commissioners Association.

Finally, if Judge Nadeau is entitled to have his legal defense provided by the State under the Maine Tort Claims Act or by the County Commissioners Association Risk Pool, any defense that might be available would almost certainly not cover the requests for affirmative relief that Judge Nadeau has asserted in his cross claims against York County and in his third party claims against Carol Lovejoy and Gregory Zinser.[2]

The entry shall be:

Defendant's motion to dismiss the amended complaint and defendant's motion to compel a legal defense and reimbursement from York County are denied. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: January 6, 2016

Thomas D. Warren
Justice, Superior Court

---

[2] The motions by York County, Lovejoy, and Zinser to dismiss the cross claims and the third party claims were argued on January 5, 2016, and those motions remain under advisement.

4