**TOWN OF UNION**

v.

**Michael STRONG et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 16, 1996.

Decided July 31, 1996.

Roger R. Therriault, Bath, for Plaintiff.

Randal E. Watkinson, Strout & Payson, P.A., Rockland, for Defendants.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

Michael and Tiffany Strong appeal from the judgment of the Superior Court (Knox County, *Alexander, J.*) affirming the judgment of the District Court (Rockland, *Field, J.*) in favor of the Town of Union on its 80K complaint alleging that the Strongs violated the town's shoreland zoning ordinance. On appeal, the Strongs contend that the Court erred in its interpretation of the Union Zoning Ordinance and in its failure to find that the Town was equitably estopped from enforcing certain provisions of the ordinance against the Strongs. We affirm the judgment.

Tiffany Strong, the daughter of co-defendant Michael Strong, is the record owner of property located adjacent to Seven Tree Pond in Union. In 1985, Michael Strong filed an application with the town's Code Enforcement Officer (CEO) to convert a cottage located on the property to year-round use. The plans submitted with the application revealed that Strong would move the house away from the pond by seven additional feet and add on the pond side of the home a ten foot wide deck extending along the entire length of the home.

When the cottage was relocated in 1987, Strong moved it even further back than anticipated because he encountered a rock ledge that impeded his excavation for the home's permanent foundation. With the house now set further back, Strong increased the width of his deck to sixteen feet, believing that such extension would not violate the town's shoreland zoning ordinance because the edge of the deck (by Strong's measurement) remained more than seventy-five feet from the pond's high water mark.

In August of 1990 Union did not have a code enforcement officer and members of its planning board were operating in this capacity. During a visit to the Strong property as part of their consideration of Strong's application for a permit to construct a garage, they noted that Strong's deck appeared to exceed the width allowed by his permit. Acting as the CEO, the planning board notified Strong by letter that his deck was larger than allowed under his permit and violated the seventy-five foot waterfront setback. The planning board ordered Strong to cease construction of the deck and to bring the existing deck into compliance with the issued permit.

Strong responded to the planning board by letter, contending that his deck violated neither state law nor local zoning ordinances. After meeting to consider Strong's response, both the recently-hired CEO, orally, and the planning board, in writing, notified Strong that his deck was not in violation of the shoreland zoning ordinance and that he could continue to build the deck.

The Town took no further action on the deck until August of 1991 when the town's CEO again visited the Strong property. At this time the deck was still only "partially complete." Although the CEO verbally ordered Strong to cease construction of the

deck, Strong relied on the board's earlier letter stating that his deck complied with the town's zoning ordinance. Thereafter, Strong completed his deck and the Town commenced this land use action against him and his daughter.

After a hearing, the court found that Strong's construction of his deck violated Union's zoning ordinance because it was wider than the deck for which Strong had been issued a building permit and because it violated the seventy-five foot shoreland setback. Based on its findings of these violations and those related to Strong's unauthorized construction of a garage,[1] the court ordered Strong to remove all portions of the deck that were within seventy-five feet of the high water mark and to pay a civil penalty of $7,500 and attorney fees of $5,714.66. Strong appealed to the Superior Court, which affirmed the District Court's judgment, and this appeal followed.

### Application of the Setback

■ Strong first argues that because the seventy-five foot setback applies only to "principal structures," and the court concluded that his deck was an "accessory structure," the court should not have applied the setback to his deck.

■ When the Superior Court acts as an intermediate appellate court, we directly review the record before the District Court for clear error in its findings of fact or application of the law. *Town of Hartford v. Bryant*, 645 A.2d 18, 19 (Me.1994). The pertinent portions of the zoning ordinance state:

I. Principal Structure
The structure in which the primary use of the lot is conducted.

J. Accessory Structure
A structure of a nature customarily incidental or subordinate to that of the principal structure or the primary use to which the premises are devoted.

---

1. Despite the lack of a permit and repeated admonishments to desist by the planning board, Strong constructed a two-car detached garage on his property. The court found that construction of the garage violated the town's shoreland zon-

ing ordinance because it was built without a permit and because its location violated the zoning ordinance's twenty-foot sideline setback requirement. On appeal, Strong does not contest

Union, Me., Shoreland Zoning Ordinance § 13 (June 30, 1974).[2] Additionally, Section 11(M)(1) of the shoreland zoning ordinance states that the seventy-five foot setback requirement applies only to *"all principal structures* in the Resource Protection and Limited Residential–Recreational Districts." Union, Me., Shoreland Zoning Ordinance § 11(M)(1) (June 30, 1974) (emphasis added). Applying these provisions, the court concluded both that the deck was an "accessory structure" and that it had to be set back seventy-five feet to comply with an ordinance provision that is expressly applicable only to "principal structures." As Strong points out, the court's application of the ordinance to Strong's deck is logically inconsistent. Nevertheless, we agree with, and, therefore, affirm, the court's ultimate conclusion that the setback must be applied to the Strong's deck.

The proposed deck was directly joined to the house, *i.e.,* the principal structure. Generally, "accessory structures must be on the same lot as the principal building *but they may not be attached to it.* Additions made to a principal structure will not qualify as an accessory use." PATRICK J. ROHAN, 6 ZONING AND LAND USE CONTROLS § 40A.07 (1995) (emphasis added). When the deck was joined to the house it became an extension and integral part of the principal structure and, therefore, must comply with setback requirements that apply to principal structures. *See Yunker v. Means,* 271 Or. 56, 530 P.2d 846, 847 (1975) (deck used for usual deck uses not an accessory structure for setback purposes). *See also Daughters of St. Paul v. Zoning Bd.,* 17 Conn.App. 53, 549 A.2d 1076, 1083 (1988) (stating that physical separation is essential to identification of structure as an accessory structure). Thus, while we conclude that the court erred in characterizing the deck as an "accessory structure," we affirm its ultimate conclusion that the seventy-five foot setback should be

applied to the deck. *See L. Ray Packing Co. v. Commercial Union Ins. Co.,* 469 A.2d 832, 834 (Me.1983) (where the legal reasoning of the court is incorrect, but its ultimate conclusion is correct in law, it must be sustained on appeal).

### *Measurement of the Setback*

■ Having determined that the ordinance's setback requirement applies to the deck, we must next determine in what manner the setback is to be measured. Section 11(M)(1) of the Shoreland Zoning ordinance states:

All principal structures in the Resource Protection and Limited Residential–Recreational Districts shall be set back at least 75 feet from the normal high water mark of any pond or river as defined.

Union, Me., Shoreland Zoning Ordinance § 11(M)(1) (June 30, 1974). While other provisions of the zoning ordinance specify the method by which measurements are to be made, some requiring over-the-land measurement and others horizontal measurement, the setback provision at issue here is silent as to how it should be measured.[3] *Compare* Union, Me., Shoreland Zoning Ordinance § 11(N)(2) (June 30, 1974) (measuring distance in "feet along surface of the ground") *with* Union, Me., Shoreland Zoning Ordinance § 11(J)(2) (June 30, 1974) (stating that setback for sewage system shall be no less than 100 horizontal feet). Strong contends that the ordinance's varied treatment of measurement methodology creates an ambiguity that requires us to strictly construe the ambiguity in favor of him by adopting the "over-the-ground" method of measurement he champions. We disagree.

■ Interpretation of provisions in a zoning ordinance is a question of law. *Mayberry v. Town of Old Orchard Beach,* 599

---

these findings or the assessment of fines as a result of these violations.

**2.** Although the 1974 Union shoreland zoning ordinance was revised in 1991, and the 1985 land use ordinance was revised in 1990 and 1991, the first editions of both ordinances are relied on because Strong's actions at issue in this appeal occurred prior to the revisions.

**3.** As the name implies, the "over-the-land" measurement methodology requires the surveyor to measure the required distance in a straight line along the surface of the earth. The horizontal measurement methodology contemplates measurement of the designated distance by extending lines vertically from the two points on the ground between which the surveyor is measuring and then measuring along a horizontal straight line perpendicular to these two lines.

A.2d 1153, 1154 (Me.1991). There are several principles of statutory construction that apply to the interpretation at issue here. The contested language must be construed reasonably and with regard to both the ordinance's specific object and its general structure. *Ray v. Town of Camden*, 533 A.2d 912, 914 (Me.1987). Each undefined term is given its common and generally accepted meaning unless the context of the statute clearly indicates otherwise. *George D. Ballard, Builder, Inc. v. City of Westbrook*, 502 A.2d 476, 480 (Me.1985). Additionally, when the municipality seeks to impose penalties for violation of the zoning ordinance, or the contested provision limits the use of real estate, the provision will be strictly construed. *Town of Hartford v. Bryant*, 645 A.2d 18, 19 (Me. 1994) (stating that when town seeks to impose fines for zoning violation ordinance will be strictly construed); *LaPointe v. City of Saco*, 419 A.2d 1013, 1015 (Me.1980) (stating that when provisions to be construed limit use of land they will be strictly construed).

▬▬▬ Focusing on this last precept of statutory construction, Strong asks us to ignore the other applicable rules of statutory interpretation. Strict construction, however, cannot be used to defeat the clear intent of the statute nor to construe the statute in an unreasonable manner. *See State v. Millett*, 392 A.2d 521, 525 (Me.1978) (stating that rule of strict construction is subordinate to rule that judicial interpretation must be reasonable and sensible with a view to effectuating the legislative design and true intent of the legislature); *Moyer v. Board of Zoning Appeals*, 233 A.2d 311, 316 (Me.1967) (statutes must be strictly construed but nevertheless should be read according to their natural and most obvious import); *Violette v. Macomber*, 125 Me. 432, 434, 134 A. 561, 562 (1926) ("The rule of strict construction ... is subordinate to the rule of reasonable, sensible construction, having in view effectuation of the legislative purpose, and is not to be so unreasonably applied as to defeat the true intent and meaning of the enactment."). *See also* SUTHERLAND STAT. CONST. § 58.01 (5th ed. 1992) ("Strict construction does not mean strained construction which is against the legislature's intent."). Contrary to the Strongs' contention, the principle of strict construction does

not require that we adopt a construction of the ordinance that is most favorable to the property owner if adoption of such a construction is inconsistent with the common and general usage of terms contained in the ordinance or incongruent with the ordinance's apparent purposes.

The general objectives of the Union shoreland zoning ordinance, the specific objectives of shoreland setbacks, and the customary methods of surveying boundaries, all counsel against the measurement interpretation advanced by Strong and in favor of the use of the horizontal methodology. The town's shoreland zoning ordinance lists among its purposes:

> to further the maintenance of safe and healthful conditions; prevent and control water pollution; protect spawning grounds, fish, aquatic life, bird and other wildlife habitat; control building sites, placement of structures and land uses; and conserve shore cover, visual as well as actual points of access to inland and natural beauty.

Union, Me., Shoreland Zoning Ordinance § 1 (June 30, 1974). Shoreland setbacks further these objectives by keeping developmental activities from encroaching upon the shore and by limiting introduction of artificial structures into the natural and fragile setting of the shoreline. Requiring the shoreland setback to be measured along the horizontal plane results in structures being placed further back from the high water mark and thereby best serves the protective purpose of the shoreland setback.

Common property surveying techniques also support the court's determination that the setback should be measured horizontally. "When referring to distance, it is *horizontal* distance relative to some actually defined unit." CURTIS M. BROWN & WINFIELD H. ELDRIGE, EVIDENCE AND PROCEDURES FOR BOUNDARY LOCATION 192 (1962) (emphasis in original). *See also* WALTER G. ROUBILLARD ET AL., BROWN'S BOUNDARY CONTROL AND LEGAL PRINCIPLES 45 (1995) ("Distances cited in modern descriptions are presumed to be along a horizontal straight line."). Thus, the court did not err in construing the Union

zoning ordinance as requiring that the distance between the high water mark and the edge of the deck be measured horizontally.

### Equitable Estoppel

 Strong further contends that the Town should be estopped from enforcing its zoning regulations against him because he completed his deck in reliance on representations made to him by the planning board. We disagree.

The doctrine of equitable estoppel may be applied to the activities of a governmental official or agency in the discharge of a governmental function. *F.S. Plummer Co. v. Town of Cape Elizabeth,* 612 A.2d 856, 860 (Me.1992); *Maine School Administrative District No. 15 v. Raynolds,* 413 A.2d 523, 533 (Me.1980). Whether the facts of a case give rise to an estoppel is a question of law for the court. *Holt v. New England Tel. & Tel. Co.,* 110 Me. 10, 12, 85 A. 159, 159–60 (1912). In assessing a claim of equitable estoppel against a governmental entity we consider the totality of the circumstances, including the nature of the particular governmental agency, the particular governmental function being discharged, and any considerations of public policy arising from the application of estoppel to the governmental function. *Maine School Admin. Dist. No. 15 v. Raynolds,* 413 A.2d at 533. Furthermore, we have cautioned that the doctrine of equitable estoppel should be "carefully and sparingly applied," *Vacuum Systems, Inc. v. Bridge Const. Co.,* 632 A.2d 442, 444 (Me. 1993), and that a party seeking to estop the enforcement of a zoning ordinance bears a greater burden of proof because of the "'forceful public reasons that militate against restricting the enforcement of municipal zoning ordinances.'" *F.S. Plummer Co. v. Cape Elizabeth,* 612 A.2d at 860–61 (quoting *City of Auburn v. Desgrosseilliers,* 578 A.2d 712, 715 (Me.1990)).

The facts of this case do not support the application of equitable estoppel. Although Strong received a letter from the planning board stating that he could continue to construct his deck, the CEO visited the Strong home about a year after the receipt of this letter and verbally ordered Strong to cease construction of his deck at a time when the deck was only "partially constructed." The CEO advised Strong that the deck was in violation of the zoning ordinance. Strong ignored the CEO's directive and continued to build his deck. Under these circumstances, Strong cannot argue that he relied reasonably on governmental conduct in finishing his deck. Moreover, ample evidence in the record supports the conclusion that Strong was bent on completing the deck regardless of whether the CEO or the planning board approved its construction. As noted by the court in its findings, Strong's letters to the planning board throughout this acrimonious permitting process demonstrated a lack of respect for and a stubborn resistance to the board's authority. Despite repeated warnings, Strong constructed his two car garage without ever obtaining a permit for it. Given this history and conduct, there is no basis for invoking the doctrine of equitable estoppel to prevent the Town from enforcing its zoning ordinance.

The entry is:

Judgment affirmed.

All concurring.