STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
Docket No. AP-99-17

JLH - PEV - 1/14/2002

Earl F. Dyer, Jr.,             )
        Plaintiff             )
                              )
                              )
        v.                    )    ORDER ON APPEAL
                              )
                              )
                              )
Town of Hudson,              )
        Defendant            )

FILED AND ENTERED
SUPERIOR COURT

JAN 14 2002

PENOBSCOT COUNTY

Pursuant to 30-A M.R.S.A. § 2691(3)(G), TOWN OF HUDSON, MAINE BOARD OF APPEAL ORDINANCE § XII(A) and M.R.Civ.P. 80B, Earl F. Dyer, Jr. appeals from a decision of the Town of Hudson Zoning Board of Appeals in which it denied his application for a zoning variance and denied his appeal from a decision of the Town's Code Enforcement Officer ("CEO") finding Dyer to be in violation of the Town's zoning ordinances.

The limited record on this appeal provides some limited insight into the factual and procedural background of this case.[1]  In 1997, the Town

---

[1] The question of the record's contents has been the subject of a number of filings submitted by the parties and orders issued by the court.  The orders dated April 5 and May 23, 2001, identify the material that is properly included in the record.  The May 23 order, however, includes an error.  It suggests that sections III(B)(1), IV(G)(1) and IV(G)(2) of exhibit O are part of the record, based on the plaintiff's request and the agreement of the defendant.  Exhibit O is the ordinance controlling proceedings before the Board.  In fact, no such sections exist in that ordinance.  Rather, the defendant had agreed that several sections of exhibit J (the Town's Land Use Ordinance) should be included in the record on this appeal.  A review of those ordinances makes the court's mistake apparent, and no party appears or claims to have been prejudiced.  (Indeed, neither of the parties sought a

1

issued Dyer certificates of occupancy to allow the residential occupancy of an apartment located over his garage (R. A) and to allow that residential area to be used on a year round basis (R. C). Dyer's residence and the associated garage are located in a subdivision which had been approved several years prior to the date when Dyer purchased his lot, in 1994. (R. F(5).) Pursuant to the terms of the Town's approval of the subdivision, the lots could be used for "single family residences only." (*Id.*; R. E.[2]) Dyer advised the Town's CEO in 1997 that the apartment was to be used by Dyer's father. (R. F(5).) It was on this basis that the CEO issued the certificates of occupancy. (*Id.*) In late 1998, the CEO learned that Dyer's father had vacated the apartment and that it was now rented to a "young couple." (*Id.*) Because of this development, the CEO concluded that Dyer's use of the apartment violated the Town's ordinances because, first, the lot was not limited to a single family residency, and, second, because the de

---

correction or clarification of the May 23 order.) Also, as the defendant's April 25, 2001, submission states, the sections that should be included by agreement are VI(G)(1) and VI(G)(2) (rather than IV). Thus, those three sections of exhibit J are included in the record.

[2]Exhibit E of the record consists of handwritten minutes from the Board's meeting when it considered Dyer's application. Those minutes are difficult to read and, in fact, indecipherable in some parts. Additionally, some of the photocopied pages are clearly cut off at the bottom, thus eliminating some of the text. Even beyond these problems, it is noteworthy that at the testimonial hearing associated with Dyer's Freedom of Access Act claim, the Board's chair testified that the meeting ran in excess of two and a half hours. The amount of information contained in the handwritten minutes clearly would not take that long to present.

As the court noted in the April 2 order that addressed the contents of the record on this appeal, those minutes -- to the extent they are helpful at all -- cannot be used to determine what evidence was *not* presented at the hearing: they may have been incomplete to begin with, and because of difficult handwriting and poor quality copies, one cannot legitimately conclude that any omissions from the minutes mean that, in fact, an issue was not raised or evidence not presented. Rather, the legible portions of the minutes can be used only to provide content regarding matters that are reflected in that record.

facto creation of a second lot (namely, a portion of the original parcel associated with the apartment) did not satisfy the minimum lot size requirements. (*Id.*)

From this finding of a violation, Dyer filed an application with the Board for a variance that would allow him to continue his use the apartment as a rental unit for use by occupants other than family members. (R. K.) He also filed an administrative appeal from the CEO's decision to issue the violation. (R. L.) The Board held a hearing on these matters on March 12, 1999. Dyer and his attorney were present and, along with other participants, were heard by the Board. After the presentations were completed, the Board went into a brief executive session, immediately after which the members returned to the open forum and voted to deny Dyer's application for a variance and his appeal from the CEO's decision. (R. D, E.)

On this appeal, Dyer argues that the Board's executive session was illegal and that the Board erred in denying his variance request and his appeal.

**A. Executive session**

Dyer first contends that the Board violated the Freedom of Access Act (FOAA) because it went into executive session illegally and, during that executive session, engaged in discussions that exceeded the scope of matters that can be addressed properly in that context. *See* 1 M.R.S.A. §§ 405(3), (6). As part of the proceeding at bar, a testimonial hearing was held on this aspect of Dyer's claim. *See Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 11, n.6, 743 A.2d 237, 241; *Underwood v. City of Presque Isle*, 1998 ME 166, ¶ 23, 715 A.2d 148, 155. Although, in its

3

essence, this action is a review of the municipal proceedings, Dyer's FOAA claim entitles him to a trial de novo on that limited issue. *Baker's Table*, 2000 ME 7, ¶ 11, n.6, 743 A.2d at 241. The evidence presented at the testimonial hearing, however, is supplemented by evidence also apparent from the record on appeal. *See* Order dated April 5, 2001.

At the March 1999 administrative hearing, the Board was constituted of four members. The hearing was of considerable length. The Board had heard the presentations of Dyer and other interested parties, and the Board's members had engaged in a public discussion of the issues raised during the proceedings. After the meeting had gone on for two and a half hours, the Board's chair called the remaining members into an executive session. The Board's members did not vote on the request for executive session. Dyer's attorney objected to the executive session. The Board's members then retired to a different room in the same building where the public meeting was being held, and they remained in executive session for two or three minutes. In that non-public setting, the chair advised the members that they had the option of casting their votes by hand, by voice or by written ballot. Because the Board meets infrequently, the chair wanted to remind the members of the voting procedure. He called the executive session for this purpose in order not to embarrass the Board: he evidently felt that if he provided that reminder publicly to the members, it might appear that the Board did not know how to conduct itself. At the hearing on this issue, the chair acknowledged that the executive session probably was not necessary. While in executive session, the members did not engage in a discussion of the substantive issues relevant to the hearing, and no one other than the chair made any statements.

The Board members then returned to the room where the public meeting was held. The chair stated that the Board had gone into executive session to review the manner in which the members would cast their votes. The Board then voted to deny Dyer's applications. Within the next several days, the chair met with another Board member to prepare the Board's written decision. The second Board member had the decision form on his home computer, and so this circumstance was one of convenience. The text of the written decision was based on information developed at the March 12 meeting and reflected the Board's decision reached and announced at the public hearing.

Based on these factual findings, the court concludes that the Town, through its Board, violated the provisions of the FOAA in one way: the executive session was not preceded by a "recorded vote of 3/5 of the members. . . ." 1 M.R.S.A. § 405(3). Rather, the session was instigated unilaterally by the chair. None of the other Board members objected or resisted, and, as the chair testified, they tacitly agreed to go into executive session. The statute, however, requires more that tacit agreement.

Dyer's also argues that the executive session was illegal because during that session, the Board considered matters falling outside of the parameters established in section 405(6). Section 405(6) permits a board to retire to executive session and conduct "deliberations" on matters that are narrowly defined in that statutory subsection. Dyer's argument calls for the court to determine whether the Board engaged in "deliberations," as that term is used in section 405(6), while in executive session. The Law Court has established the following principles of statutory construction: "When construing a statute, 'we look to the plain meaning of the language

5

to give effect to the legislative intent.'. . . Additionally, we consider the statutory scheme as a whole in order to reach a harmonious result. . . .Lastly, '[w]e avoid statutory constructions that create absurd, illogical, or inconsistent results.'" *Fairchild Semiconductor Corp v. State Tax Assessor*, 1999 ME 170, ¶ 7, 740 A.2d 584, 587 (internal citations omitted).

The Legislature has articulated the objectives of the Freedom of Access Act as requiring that governmental "actions be taken openly and that the records of their actions be open to public inspection and their deliberations be conducted openly." 1 M.R.S.A. § 401. Further, the specific provisions of the FOAA must be construed liberally to accomplish the Legislature's objectives. *Id.*; *see also Underwood*, 1998 ME 166, ¶ 12, 715 A.2d at 152. More specific insight into the Legislature's concept of "deliberations" is found in the particular types of issues that may be addressed in executive session. All of those matters, which are enumerated in sections 405(6)(A)-(H), are substantive: they include personnel issues that are sensitive, disciplinary matters involving students, property issues that would affect transactions of those assets, labor negotiations and other matters.

Here, the sole issue addressed during the brief closed door session was the mechanism of the voting process. In a public setting, the Board had already entertained the presentations of the attendees, and it had already engaged in a public deliberation of the issues raised during the hearing. The remaining issue was the manner in which the members would express their votes. This is a qualitatively different issue than the categories of issues that the Legislature deems can be the subject of

6

"deliberations." Therefore, the court concludes that while it was in executive session, the Board did not engage in "deliberations" within the meaning of section 405(6). *See also* 1 M.R.S.A. § 409(1) (providing that the Superior Court shall vacate an action if the "action was taken illegally in an executive session;" here, the Board did not take any action in executive session).

The remaining issue is whether Dyer is entitled to relief based on the Board's failure to precede the executive session with a recorded vote of at least three of its members.[3] In the circumstances of this case, there is no basis to invalidate the Board's vote based on the executive session that was called improperly. The issue raised during the executive session was unrelated to the substantive issues raised at the hearing and had no effect on the Board's ultimate decision. *See* 1 M.R.S.A. § 409(2). Therefore, the Board's violation of section 405(3) did not implicate or compromise any of the principles underlying the importance of public proceedings and the Legislative's specific expression in section 401. An agency's decision to invoke the executive session process in the absence of compliance with the procedural predicates may create an appearance of secrecy and certainly invites a challenge of the type made here. However, in this case, the executive session was very brief, it occurred after the members had publicly discussed the merits of Dyer's applications, and, in fact, it was not the forum for any deliberations on those merits. The procedural flaw committed by the Board, under these circumstances, was not of a type or

---

[3] Section 405(3) requires that 3/5 of an agency's members must vote in favor of executive session. Here, four Board members were present. Therefore, to satisfy the mathematical requirement of section 405(3), approval by three of those four members would have been required to approve an executive session by a recorded vote.

7

magnitude that would warrant vacating the resulting public vote and decision.[4]

## B. Denial of application for variance

The applicable municipal ordinance authorized the Board to grant a variance "only where strict application of this Ordinance, or a provision thereof, would cause undue hardship to the petitioner and his property." TOWN OF HUDSON, MAINE LAND USE ORDINANCE § VI(G)(1)(a) (R. J at p. 24); *see also* TOWN OF HUDSON, MAINE BOARD OF APPEALS ORDINANCE at p. 3 (R. O).[5] The ordinance goes on to define "undue hardship" to mean that the petitioner's property could not yield a reasonable return in the absence of variance, that the variance is warranted by a unique circumstance not common to the neighborhood, that the approval of the variance would not change the "essential character" of the area and that the hardship was not caused by the petitioner or a predecessor in interest. *Id.* at § VI(G)(1)(b) (R. J at p. 25). The Town's ordinance is silent on the issue of whether these four factors germane to "undue hardship" are in the disjunctive or conjunctive. However, the enabling statute makes clear that a variance may be granted only when all four factors have been established. 30-A M.R.S.A. § 4353(4). *See also Pepperman v. Town of Rangeley*, 659 A.2d 280, 283 (Me. 1995).

The Town's ordinance charges the Board with acting on an

---

[4]In its written argument, the Town properly notes the important role of volunteer citizens such as the Board's members here. That commendable participation in public affairs, however, does not relieve board officials of their obligation to comply with the applicable requirements of law, such as those set out in the FOAA.

[5]In the photocopy of the Board of Appeal Ordinance included in the record, a portion of the page with this section is cut off. The section number therefore is not apparent.

8

application for a variance in a de novo capacity, because the Board has original jurisdiction within the municipality to consider such an issue. TOWN OF HUDSON, MAINE LAND USE ORDINANCE § VI(G)(1)(a) (R. J at p. 24). Here, the Board concluded that Dyer had not established any of the four factors necessary to support a variance. (R. D.) On this appeal, the Board's decision not to allow a variance will be affirmed unless Dyer demonstrates that the evidence presented to the Board "would compel a positive finding that the applicant [Dyer] has established undue hardship by *all four* of the criteria set forth in section 4353(4)(A)-(D)." *Pepperman*, 659 A.2d at 283 (citation omitted; emphasis in original).

Here, for two reasons, Dyer has failed to make such a showing. First, because of its poor quality, the record on appeal cannot be treated as a comprehensive memorialization of the evidence presented to the Board. In order to demonstrate that the record evidence compelled the Board to make particular findings, one needs to know what that evidence was. Such an understanding cannot be gleaned from this record. Therefore, because Dyer has not submitted a record that would allow the court to analyze the entire body of evidence presented to the Board, he necessarily fails on this issue.

Further, the existing record in fact supports the Board's decision to deny Dyer's application for a variance. For example, the minutes of the Board's meeting reflect the concerns of interested persons that if Dyer were permitted to use the apartment as a rental unit, the character of the neighborhood would be substantially changed from its single family residential nature. *See also* R. F(5). By itself, this evidence precludes Dyer from establishing on this appeal that the Board was compelled to find that

9

the variance would "not alter the essential character of the locality." TOWN OF HUDSON, MAINE LAND USE ORDINANCE § VI(G)(1)(b)(3); 30-A M.R.S.A. § 4353(4)(B).

Therefore, Dyer has not shown that the Board erred in denying his application for a land use variance.

## C. Administrative appeal

In addition to the variance application, Dyer filed an appeal to the Board from the CEO's decision that he was in violation of the Town's ordinance when he used the apartment as a rental unit for non-family members. The Board denied this appeal, and here Dyer asserts that the Board erred.

The Town's "Board of Appeals" ordinance authorizes the Board to hear appeals from decisions made by the CEO. *See* R. O at pp. 3-4. In its substance, however, such an "appeal" is a de novo factfinding process. *See id.* at § IX. Additionally, the Board's decisions must include a statement of the Board's "findings and conclusions." *Id.* at § X(B). The Board is then authorized to reverse the CEO's decision if the Board concludes that it was "unsupported by substantial evidence in the record" or if was unlawful under the provisions of the Town's ordinances. *Id.* at § X(E).

Title 30-A M.R.S.A. § 2691 establishes the procedure controlling proceedings before municipal zoning boards of appeal. A board of appeals is required to conduct a de novo hearing on a matter originating with a municipality's CEO, "unless the municipal ordinance explicitly directs otherwise. . . ." *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 7, 757 A.2d 773, 776. Here, the Town's ordinance does not "explicitly direct[]" that the Board's role is limited to an appellate review of the CEO's decision.

Therefore, because of the holding in *Stewart* and because, under a functional analysis, the Board engages in a de novo process, this court directly reviews the Board's decision that Dyer's apartment was in violation of the Town's ordinance.

Dyer argues that the Board's written decision denying his administrative appeal was insufficient, that the Town is estopped from finding a violation and that the Board's assertion of a violation is not supported by the record.

### (1) Sufficiency of the Board's written decision

The Board's written decision is entitled, "Notice of Variance Decision." The text of the decision is geared toward the variance issue. Nonetheless, in the section of the decision entitled "Decision," the Board reported that it "has voted to deny your application for a variance and for an Administrative appeal."[6]

The Town's ordinances and state statute (1 M.R.S.A. § 407) required the Board to issue a written explanation of its decision and supporting factual findings. In certain limited circumstances, however, an agency's failure to issue such a writing does not provide a basis for judicial relief. When an agency fails to make written findings or conclusions that, on the face of such a filing, would reveal the basis for the agency's decision, then court may nonetheless look to the record to identify the subsidiary facts or the basis for the agency's decision. *Christian Fellowship and Renewal*

---

[6] Eight months later -- while this action was pending--, Dyer's attorney requested the Board to supplement its written decision and expressly address the issues relevant to Dyer's appeal from the CEO's decision. (R. I.) However, the Law Court has made clear that the burden rests on the agency to explain its decision, rather than on a party to request such findings and conclusions. *Christian Fellowship and Renewal Center v. Town of Limington*, 2001 ME 16, ¶ 17, 769 A.2d 834, 840.

11

*Center v. Town of Limington*, 2001 ME 16, ¶ 19, 769 A.2d 834, 840; *Pearson*, 590 A.2d at 537 n.1; *Driscoll v. Gheewalla*, 441 A.2d 1023, 1027 (Me. 1982). Here, because the plaintiff has failed to present a record on this appeal that would permit the court to meaningfully review the presentations at the hearing and the nature of the Board members' consideration of those presentations, the court cannot say here that the Board's failure to set out its findings and conclusions on the administrative appeal in writing requires that the case be remanded. *See Christian Fellowship and Renewal Center*, 2001 ME 16, ¶ 19, 769 A.2d at 840 ("It is not our intention to declare a hard and fast rule that whenever agencies fail to articulate factual findings on contested issues of fact, a reviewing court should remand the matter to the agency.").

**(2) Equitable estoppel**

In Dyer's appeal from the CEO's decision finding that he was in violation of the ordinance, he alleged that the Town was estopped from finding such a violation, because in 1997 the Town issued him a certificate of occupancy for the apartment. (R. K.) Dyer argues that the Town is now estopped from basing a violation on the use of that apartment that it had previously allowed.

The Board received evidence that Dyer's property may be used for "single family residences only." (R. F(5).) This restriction is contained in the subdivision plan that the Town approved prior to Dyer's acquisition of his property. (*Id.*) Although the certificate of occupancy issued in 1997 does not, on its face, include any conditions or limitations regarding the occupants of the apartment, the Board received evidence that the 1997 permit was issued because Dyer's father intended to live there. (R. F(5).)

12

An abutter advised the Board that he considered this arrangement to fall within the single family requirement. (R. E.) The CEO concluded that Dyer was in violation of the restriction only after he (the CEO) learned that Dyer's father had vacated the apartment and that a "young couple" (presumably unrelated to Dyer) now occupied the premises. (R. F(5).)

The Town argues that Dyer is not permitted to invoke the notion of equitable estoppel because, it contends, he is invoking the doctrine offensively rather than defensively. In *Buker v. Town of Sweden*, 644 A.2d 1042, 1044 (Me. 1994), the Law Court held that a property owner could not use equitable estoppel as the basis for an affirmative claim for relief. Rather, the doctrine was available only as a defense. Here, that is the application invoked by Dyer. The Town has found Dyer to be in violation of its land use ordinance, and, as a defense to that decision, Dyer claims that the Town is equitably estopped from making such a finding. Thus, unlike the claim in *Buker* where the property owner's permit application was grounded on an argument of equitable estoppel, Dyer relies on this legal principle from a defensive posture.

The question of whether a governmental agency may be estopped is one of law for the court. *Town of Union v. Strong*, 681 A.2d 14, 19 (Me. 1996). The Law Court has further ruled:

> In assessing a claim of equitable estoppel against a governmental entity we consider the totality of the circumstances, including the nature of the particular governmental agency, the particular governmental function being discharged, and any considerations of public policy arising from the application of estoppel to the governmental function. . . .Furthermore, we have cautioned that the doctrine of equitable estoppel should be 'carefully and sparingly applied,. . .and that a party seeking to estop the enforcement of a zoning ordinance bears a greater burden of proof because of the

13

"'forceful public reasons that militate against restricting the enforcement of municipal zoning ordinances.'"

*Id.* (citations omitted).

Here, irrespective of whether the CEO properly issued the 1997 certificate of occupancy, the Town is not estopped from finding that Dyer is in violation of its ordinance by renting the apartment to third parties. In 1997, based on the CEO's conversations with Dyer, the CEO issued a certificate of occupancy with the expectation -- based on information that Dyer himself provided to the CEO -- that Dyer's father would live in the apartment. In December 1998, the CEO learned (from a source not identified in the record) that the apartment was then being leased to other people. Thus, Dyer himself created a change in circumstances that took the activity authorized by the CEO outside of its anticipated parameters. The apartment was no longer occupied by a family member, which meant that the property was not longer used as a single family residence. This represents a substantial deviation from the situation that the Town allowed in 1997 because it changed the character of the apartment to a commercial application. In *Turbat Creek Preservation, LLC v. Town of Kennebunkport,* 2000 109, ¶ 17, 753 A.2d 489, 493, the Law Court held that a town is not equitably estopped from finding a land use violation if the property owner misled the town regarding the nature of his conduct and the intended use of the property. Here, Dyer materially changed the use of the apartment, and the Town therefore is not estopped from asserting a violation on the basis of change.

Further, if the Town were estopped from finding Dyer in violation, then the result would be a non-conforming use of the property. Non-

conforming uses are disfavored. *Oliver v. City of Rockland*, 1998 ME 88, ¶ 9, 710 A.2d 905, 908. Therefore, particularly when one considers the change in Dyer's use of the apartment after the Town issued its 1997 certificate of occupancy, important policy considerations fatally weaken Dyer's estoppel argument.

**(3) Sufficiency of the evidence**

Finally, Dyer argues more generally that the Board erred when it found that his use of the apartment violated the Town's ordinance. A board's decision is reviewed for an abuse of discretion, errors of law or findings not supported by substantial evidence in the record. *Chapel Road Associates, L.L.C. v. Town of Wells*, 2001 ME 178, ¶ 9, ___ A.2d ___, ___. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Veilleux v. City of Augusta*, 684 A.2d 413, 415 (Me. 1996) (citation and internal punctuation omitted).

As with Dyer's challenge to the factual basis for the Board's denial of his variance application, the inadequacies of the record on this appeal preclude any finding that the Board was compelled to find him free of any violations. Further, evidence presented to the Board, to the extent that such evidence is revealed by this record, provides an affirmative basis for the Board's finding that the rental apartment violated the Town's ordinances. *See e.g.,* R. F(5).

The entry shall be:

For the foregoing reasons, the decision of the Town's Zoning Board of

15

Appeals is affirmed.

Dated:   January 11, 2002

Justice, Maine Superior Court
Jeffrey L. Hjelm

16

Date Filed _____ 4/14/99 _____ PENOBSCOT _____ Docket No. _____ AP-99-17
County

Action ___ CIVIL - 80B APPEAL ___

11/13/00 - COUNT 4 DISMISSED

Assigned to Justice Jeffrey L. Hjelm

EARL F. DYER, JR.                    INHABITANTS OF THE TOWN OF HUDSON

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| ROBERT E. MILLER, ESQ.<br>P O BOX 414 - 17 N. MAIN STREET<br>OLD TOWN, ME 04468 | Peter M. Beckerman, Esq.<br>105 Farm Brook road<br>Sidney, Maine  04330 |

| Date of Entry | |
|---|---|
| 4/14/99 | Complaint filed - Exhibits A, B, C & D not included. |