STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. AP-04-65

```
                                    *
                                    *
FRANCIS DRAKE,                      *
                                    *
                Appellant           *
                                    *         ORDER
        v.                          *
                                    *
CITY OF PORTLAND,                   *
142 PRESUMSCOT, LLC.                *
                                    *
                Appellee            *
                                    *
```

        This case comes before the Court on Petitioner Francis Drake's rule 80B appeal

from the Portland Zoning Board of Appeals' November 4, 2004 denial of Petitioner's

appeal challenging the legality of a building inspection permit issued to 142 Presumscot,

LLC.

                        FACTUAL BACKGROUND

        In May, 2003, 142 Presumpscot, LLC (LLC) submitted to the City's Planning

Authority an application seeking site plan approval of a proposed 9,865 square foot

addition to its existing building located at 142 Presumpscot Street. A portion of the

addition is located in the City's I-L (light industrial) zone, and a portion is located in the

R-5 (residential) zone. The Planning Authority approved the LLC addition and Drake

appealed. In June 2004, the City Planning Board rejected Drakes appeal and upheld the

approval.[1] LLC then applied for the issuance of a building permit to begin construction of

the addition. The Zoning Administrator approved the permit with conditions. Drake

---

[1] Drake appealed the site plan approval to this Court in a separate 80B appeal. AP-04-035.

appealed that decision to the Zoning Board of Appeals (ZBA) pursuant to § 14-472(1)(b) of the Code. The ZBA denied Drake's appeal and upheld the permit. Drake then appealed that decision to the Superior Court pursuant to M.R. Civ. P. 80B.

## DISCUSSION

Drake argues that the ZBA committed six errors of interpretation of the Zoning Code. The Court reviews a decision of the ZBA for abuse of discretion and/or findings not supported by substantial evidence in the record. *York v. Town of Ogunquit*, 2001 ME 53, ¶ 6, 769 A.2d 172, 175. However, interpretation of a zoning ordinance is a question of law and is reviewed de novo. *Isis Development, LLC v. Town of Wells*, 2003 ME 149, ¶ 3, n.4, 836 A.2d 1285, 1286. There are several principles of statutory construction that apply to the interpretation at issue here. "Each undefined term is given its common and generally accepted meaning unless, the context of the statute clearly indicates otherwise." *Town of Union v. Strong*, 681 A.2d 14, 17-18 (Me. 1996). Ultimately, "judicial interpretation must be reasonable and sensible with a view effectuating the legislative design and true intent of the legislature." *Id.* at 18.

a.      40 Foot Minimum Setback

Drake argues that the ZBA incorrectly measured the distance between the structure and the property line as being 40 feet pursuant to § 14-234(d). Although the ZBA found that a measurement of a straight perpendicular line from the structure to the property line meets the 40-foot requirement, a measurement from the corners of the structure on the southerly side to the closest property line

2

does not.[2] The City of Portland maintains that for the past 50 years it has been measuring yard setbacks in a straight line perpendicular to the building.

Pursuant to § 14-234, "the minimum side yard shall be forty (40) feet when the side property line abuts a residential zone." Although this provision is silent as to how a side yard should be measured, section 14-47 of the Code provides that the width of a side yard "shall be the least distance between the side lot line and any structure." Accordingly, Drake believes that § 14-234 requires that measurements of side yards be taken of the "least distance" between the structure and the property line. Following this measuring technique, a diagonal measurement from the structure to the closest residential property line is less than 40 feet in two places.

In *Town of Union v. Strong*, the Law Court addressed the manner of measurement of a shoreline setback where the Code provision was silent. 681 A.2d 14 (Me. 1996). The issue was whether to measure the setback using a horizontal measurement or an over-the-ground measurement. *Id.* at 17. The Law Court held that the Town's use of a horizontal measurement was reasonable and in line with the legislative intent and the protective purpose of the shoreline setback provision. *Id.* at 18. Two legal treatises on boundary locations and control further supported this determination.[3]

---

[2] At oral argument, neither party knew the exact measurement from the two corners on the southerly side of the property to the boundary line.

[3] CURTIS M. BROWN & WINFIELD H. ELDRIDGE, EVIDENCE AND PROCEDURES FOR BOUNDARY LOCATION 192 (1962); see also WALTER G. ROUBILLARD ET AL., BROWN'S BOUNDARY CONTROL AND LEGAL PRINCIPLES 45 (1995) ("Distances cited in modern legal descriptions are presumed to be along a horizontal straight line.")

Here, a review of the general structure of the ordinance and its purpose provides guidance to the Court on the proper interpretation of § 14-234.[4] It is clear that one purpose of the zoning code, inter alia, is to respect the boundaries of residential zones by avoiding the overcrowding of land and preventing encroachment by industries in industrial zones. It follows then that the ZBA's construction of § 14-234 hinders this purpose. Admittedly, measurement of the property in this case is difficult due to its odd shape. However, when the Code provides that a side yard must be forty feet from the property line, it is reasonable to interpret that the distance be measured from the closest point on the property line to the closest point on the structure. This construction provides the most protection from encroachment by industries for those living in residential zones that abut industrial zones.

b.      Grafton Street Delivery Door

Drake argues that the proposed delivery door at loading platform height with no loading bay on the Grafton Street side of the property violates the loading bay requirements in § 14-352.[5] However, the ZBA found that the door in question is meant to be a delivery door for deliveries by UPS and Federal

---

[4] Section 14-46 Purpose.
This article, made in accordance with a comprehensive plan, is enacted for the purpose of decreasing congestion in streets; . . . preventing the overcrowding of land; avoiding undue concentration of population; facilitating the adequate provision of transportation, sewage, schools, parks and other community facilities and utilities; thus promoting the health, safety, convenience and general welfare of the citizens of the city. This article is made with reasonable consideration among other things, to the character of each zone and its peculiar suitability for particular uses and with a view to conserving and establishing the value of property and encouraging the most appropriate use of land throughout the community.

[5] Section 14-352 requires that a loading bay meet the minimum dimensions of 50' x 14.'

Express trucks and the like, as opposed to a loading bay, which the ZBA determined was for the loading and unloading of tractor-trailer trucks. Furthermore, evidence in the record indicates that LLC designed a rear-loading bay for the loading and unloading of tractor-trailers trucks.

Based on the reasonableness of the ZBA's definition of loading bay and the fact that LLC envisions receiving large deliveries at the designated loading bay in the rear, the Court concludes that the door at Grafton Street is merely a delivery door that need not meet the requirements of § 14-352.

c.     Rear Loading Bay

Drake has two complaints about the rear-loading bay. He first argues that when trucks are docked at the loading bay they will extend into the R-5 zone, which violates § 14-335. Section 14-335 states that more than one commercial vehicle is prohibited from off street parking in a residential zone. LLC argues that trucks that are loading are not parked, and thus § 14-335 does not apply.

The ZBA held that this issue has res judicata effect based on an April 17, 2003 decision. The April 17, 2003, decision by the ZBA approved LLC's parking of passenger cars in an R-5 zone pursuant to § 14-344. In that case, Drake was present as an abutter and spoke about these very same concerns. In regards to the passenger cars issue, the ZBA considered whether or not the loading tractor-trailers would be "parking" while they loaded. The final decision was that a loading tractor-trailer was not parked. The ZBA concluded in this case, that because these issues were part of the ZBA's previous consideration and

5

deliberation under the criteria for determining whether passenger vehicles could be parked in the R-5 zone.[6]

Drake's second argument is that the rear-loading bay does not meet the dimensional requirements of § 14-353. Section 14-353 provides that additional loading bays must meet the 14' x 50' dimensional requirement of § 14-352. Drake's reasoning is that because the loading bay has two doors, it should also have two loading bays. There is no support for this interpretation in the Code.

d.    Improvements on Grafton Street

Drake's final argument is that LLC should be required to make improvements on Grafton Street, an unpaved road providing access to the building. Section 14-403(b) provides that an unimproved street that abuts and provides principal access to a lot must be improved. The ZBA found that Presumscot Street, which meets the minimum requirements for street improvements, provides direct street frontage and principal access to LLC. Therefore, the ZBA held that LLC did not have to make improvements on Grafton Street.[7]

---

[6] Another one of Drake's contentions is that truck-maneuvering use in a residential zone is contrary to the purpose of the Code. Section 14-47 defines use and accessory use as meaning "for the purpose which land is designed, arranged or intended to be used." From this, Drake argues that because LLC designed the parking lot for the maneuvering of trucks, the use is in violation of the Code. The ZBA held that truck-maneuvering was not a use of the land as intended by § 14-47. Moreover, the ZBA again felt that this issue was addressed at the April 17, 2003 hearing, and thus had res judicata effect.

[7] Notably, when Drake sought approval for a 20,000 square foot warehouse on his lot, which abuts Grafton Street, he argued that Grafton Street was not his principal access and won that point.

Drake's appeal of § 14-234, the minimum side yard, is **GRANTED**. The matter is remanded to the Portland ZBA for further proceedings. On the remaining grounds, the decision of the ZBA is **AFFIRMED**.

DATE: October 27, 2005

_____
Justice, Superior Court

Date Filed ___11-29-04___  ___Cumberland___  Docket No. ___AP-04-65___
                              County

Action ___80B Appeal___

FRANCIS P. DRAKE                    CITY OF PORTLAND and
                                   142 PRESUMPSCOT, LIMITED LIABILITY COMPANY

                              vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| David A. Lourie, Esq.<br>189 Spurwink Avenue<br>Cape Elizabeth, ME 04107-9604 | Roy T. Pierce, Esq.<br>One City Center<br>PO Box 9546<br>Portland, Me. 04112-9546<br><br>Penny Littel, Esq. City of Portland<br>389 Congress St.<br>Portland, Me. 04101 |

Date of
Entry